648 So.2d 841 (1995)
Gary WILLIAMS, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 94-368.
District Court of Appeal of Florida, Fifth District.
January 13, 1995.
*842 Jane E. Carey, Morall & Carey, Orlando, for appellant.
Patricia A. Savitz, Orlando, for appellee.
PER CURIAM.
Gary Williams appeals a final order terminating his parental rights to his three children. We affirm.
HRS initially sought shelter and dependency for Williams' children in 1990, due principally to drug use by both parents and domestic violence. The children were found to be dependent and removed to foster care. In January 1994, the hearing on the petition to terminate the parental rights of the children's mother and of appellant was held. At issue is what occurred during the three and a half years of dependency, specifically whether the lower court erred in concluding that Williams had failed substantially to comply with his performance agreement during that period.
What makes this case difficult is that, in several respects, Gary Williams did endeavor to meet his obligations under the performance agreement. He had stable employment as a mason, earning a good income.[1] He attended parenting classes, frequently visited the children and cooperated with HRS counselors. He attended outpatient drug treatment.
What he did not do was remain drug free, a key component of the performance agreement. On five occasions in this three year period, random drug tests administered to Williams were positive. The most recent was October 25, 1993, less than two months before the termination hearing. Williams also seemed incapable of terminating, or at least substantially improving, his violent, co-dependent relationship with the children's mother, who was so severely addicted to drugs that she never attempted to comply with her performance agreement and did not contest the termination of her parental rights. As late as the month before the final hearing, they were living together. Williams' contention that he substantially complied with his performance agreement is therefore rejected. Failure to comply with the performance agreement is evidence of abuse, abandonment or neglect. See § 39.464(5), Fla. Stat. (1993). A parent's drug addiction is evidence of prospective neglect. Brown v. Dep't of HRS, 582 So.2d 113, 115 (Fla. 3d DCA 1991).
In terminating Williams' parental rights, based on clear and convincing evidence of prospective neglect, the lower court made the following findings:
8. That the mother started ingesting cocaine at the age of 21 in approximately 1984. Gary Williams and the mother have maintained a relationship since approximately 1987. Gary Williams started ingesting cocaine approximately five or six years ago. E.W. was born on 8/31/90 with cocaine in her system as a result of the mother's ingestion of cocaine while pregnant. By the time of the E.W.'s birth, both the mother and Gary Williams were longtime users of cocaine. As a result of the cocaine usage in the family, E.W., E.W., and C.W. were removed from the care of the mother and Gary Williams, they were adjudicated dependent and placed in foster care.
9. In October 1990, the mother and Gary Williams entered into Performance Agreements which required them, together with other requirements, to remain drug-free daily and to complete a drug treatment regimen that drug usage would no longer be part of their life.
10. Despite attendance at drug treatment, both parents continued to use cocaine during 1991. After a period of attendance in drug treatment, the mother relapsed and her cocaine usage encompassed a period from May 1991 through *843 October 1991. Gary Williams also continued to ingest cocaine and he produced positive urinalyses for cocaine in September and October 1991.
11. S.J. WILLIAMS, a female child, was born on the 9th day of January 1992 having been exposed to the cocaine use of her mother; that child was adjudicated dependent and placed in the care of the Department.
12. From September 1990 through the date of trial, the relationship between the mother and Gary Williams was unstable. Gary Williams estimates that there were at least ten times in which the mother left their place of residence only to return at later dates. Repeated instances of physical violence and relapses into cocaine use marked their relationship despite attendance at multiple drug treatment programs.
13. That despite irregular attendance at varying programs and sporadic success, the mother and Gary Williams have not refrained from the use of cocaine as evidenced by their usage as recently as October 1993. Further, in the exercise of the court's fact-finding function, the court finds the testimony of Gary Williams to be incredible both because of its nature and because of his demeanor at trial. Of particular note is his testimony wherein he implies that the only occasions on which he has ingested cocaine since the children were placed with the Department are those occasions in which urinalyses demonstrated that he had, indeed, ingested cocaine.
14. The mother and Gary Williams are both chronic cocaine users and are co-dependent personalities. The court finds their recent breakup to be merely a continuation of the ongoing pattern established in their violent relationship which has been proven detrimental to themselves and has rendered the safe return of the children to either of them impossible. In accord with the testimony of Mr. Hudson, their counselor, the court finds that this pattern cannot be broken without a significant commitment to counseling; three and one-half years after the initial placement of the children, neither the mother nor Gary Williams have made that commitment nor have they committed to living a drug-free life.
After examining the history of this family and listening to all the evidence, including Williams' inability to remain drug free or to demonstrate an ability to provide his children a safe environment free of drugs, drug addicts and violence, the lower court made the difficult decision to terminate Williams' parental rights. The lower court concluded the evidence clearly and convincingly showed a likelihood that the children would suffer neglect if they were reunited with their father. See § 39.01(37), Fla. Stat. (1993).[2] We have no basis to gainsay that decision. Kingsley v. Kingsley, 623 So.2d 780 (Fla. 5th DCA 1993). The decision of the lower court is affirmed.
AFFIRMED.
COBB, GRIFFIN and DIAMANTIS, JJ., concur.
NOTES
[1] Apparently, he paid no support for his children, however.
[2] The lower court's order terminating parental rights states:

This finding is rendered despite the initial detriment that the children may suffer as a result of the destruction of the bond which exists between the parents and their children; the court finds that, without a doubt, it is far better for these children to be placed for adoption with a loving and stable family than it is to have these children remain in foster care any longer awaiting the rehabilitation of their parents which will likely never occur.