711 So.2d 190 (1998)
Roshonda Keys GAINES, Appellant,
v.
DEPARTMENT OF CHILDREN & FAMILIES, Appellee.
No. 97-1532.
District Court of Appeal of Florida, Fifth District.
May 15, 1998.
*191 Ava Tunstall and Pauline McIntyre of McIntyre & Tunstall, P.A., Maitland, for Appellant
Alita S. Chappell and James A. Sawyer, District Legal Counsel of Department of Children & Families, Orlando, for Appellee.
THOMPSON, Judge.
Roshonda Keys Gaines appeals an order terminating her parental rights to her boys, T.K., W.K. and L.K.[1] We agree that the trial court properly terminated the parental rights as to the older boys, T.K. and W.K. The Department of Children and Families ("DCFS") proved by clear and convincing evidence that Roshonda Gaines had physically abused T.K. and W.K., and had failed to substantially comply with a performance plan entered after the children had been adjudicated dependent. These are sufficient reasons to sever the parent and child relationship. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); Fredrick v. State, Department of Health & Rehabilitative Services, 523 So.2d 1164 (Fla. 5th DCA), rev. denied, 531 So.2d 1353 (Fla.1988); Spankie v. Department of Health & Rehabilitative Services, 505 So.2d 1357 (Fla. 5th DCA), rev. denied, 513 So.2d 1063 (Fla.1987); In the Interest of L.T., 464 So.2d 201 (Fla. 5th DCA 1985). We disagree, however, that the state showed by clear and convincing evidence that the trial court should terminate the parental rights as to the youngest boy, L.K. Further, we hold there was insufficient evidence even to find that L.K. was dependent.
The trial court declared the two older boys dependent in March of 1993 and placed them into foster care after the police discovered the children at 8:30 a.m. running around in their diapers on a busy street in front of Roshonda Gaines' apartment. The police found her in the apartment intoxicated. Several neighbors told the police that the two children frequently wandered into the street without parental supervision. The mother agreed to a performance plan for the return of the children. Eventually, DCFS filed the initial termination petition in April of 1994, on the basis that the parents of T.K. and W.K. had abused and neglected the two boys by their failure to substantially comply with the performance agreement/permanent placement plans. Later, DCFS altered the status of the case by changing the goal from termination to reunification. The children had remained in foster care for three years while the mother tried to comply with the performance agreements for return of her children. Because the mother had complied with 90% of the goals of the performance agreement, DCFS allowed the children unsupervised home visits in 1996 to further reunification. After a weekend visit, the mother and her new husband, Antonio Gaines, were *192 arrested and eventually convicted on the charges of aggravated child abuse.
DCFS filed a second petition to terminate parental rights alleging that the parents had physically abused the two older boys during the home visit by beating them with a belt and wooden clothes hanger, causing them to have numerous lesions on their thighs, buttocks and lower extremities. A dependency petition as to L.K. was filed alleging that there were no known relatives or non-relatives to care for him while the parents were in jail. DCFS developed a revised performance plan for the return of the children, including L.K., but gave the mother only one month to comply with the plan. DCFS also amended the second termination petition to add L.K. The petition alleged that allowing him to continue to live in the home environment would result in a danger that his physical or emotional health would be significantly impaired. Although L.K. had lived with his mother and had never been physically or emotionally abused by her or Antonio Gaines during the time the two older boys were in foster care, he was removed after his brothers' beatings only because DCFS alleged there was no one to care for him.[2] The revised termination petition also alleged that all three boys remained at risk for further abuse and neglect if placed with the parents. The trial court scheduled a termination hearing, adjudicated L.K. dependent and terminated the parental rights as to all three children, stating:
The court finds that there has been no significant effort by the mother to complete the tasks in her Performance Agreement/Permanent Placement Plan/Case Plan. In fact, the children were re-abused after the Department determined that the mother had substantially complied with the original Plan and reunification efforts in the form of unsupervised visitation weekend visits were in effect; that history coupled with the mother's failure to subsequently comply with the subsequent case plan offered in this case leads to the court's finding that reunification with the mother would place the children [W.K., T.K. and L.K.] at significant risk for abuse.
The termination of parental rights involves a fundamental liberty interest protected by the federal and state constitutions. In the Interest of R., Children, 591 So.2d 1130 (Fla. 4th DCA 1992). To justify a termination the state must show by clear and convincing evidence that the parent abused, neglected or abandoned the child or that the child is at substantial risk of future abuse, neglect or abandonment. Id. Subsection 39.464(1), Florida Statutes (1995), provides:
(1). The Department ... or any person who has knowledge of the facts alleged or is informed of said facts and believes that they are true, may petition for the termination of parental rights under any of the following circumstances:
* * * * * *
(c) When the parent or parents engage in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent or parents in the parent child relationship threatens the life or well-being of the child irrespective of the provision of services. Provision of services is evidenced by proof that services were provided through a previous plan or offered as a case plan from a child welfare agency.
(d) When the parent or parents engaged in egregious conduct that endangers the life, health, or safety of a child or the child's sibling, or have the opportunity and capability to prevent egregious conduct that threatened the life, health, or safety of the child or the child's sibling and knowingly failed to do so.
* * * * * *
2. As used in this subsection, the term "egregious abuse" means conduct of the parent or parents that is deplorable, flagrant, or outrageous by a normal standard of conduct. Egregious abuse may include an act or omission that occurred only once but was of such intensity, *193 magnitude or severity as to endanger the life of the child.
(e) A petition for termination of parental rights may also be filed when a child has been adjudicated dependent, a case plan has been filed with the court, and the child continues to be abused, neglected or abandoned by the parents. In this case the failure of the parents to substantially comply for a period of 12 months after an adjudication of a child as a dependent child constitutes evidence of continuing abuse, neglect or abandonment, unless the failure to substantially comply with the case plan was due either to lack of financial resources of the parents or the failure of the department to make reasonable efforts to reunify the family. Such 12 month period may begin to run only after the entry of a disposition order placing the custody of the child with the department or a person other than the parent and the subsequent filing with the court of a case plan with a goal of reunification with the parent.
(Emphasis added).
After a review of the record, we find no basis to terminate parental rights as to L.K. DCFS presented no evidence that L.K. had been emotionally or physically abused while he lived with Roshonda and Antonio Gaines. Further, DCFS never offered Roshonda Gaines an opportunity to abide by a performance agreement for a period of at least 12 months. See § 39.464(a)(e), Fla. Stat. Thus, the only justifiable ground to sustain termination as to L.K. is through a finding of prospective neglect, abuse or abandonment. The state has not met its burden to show prospective abuse.
In Padgett v. Department of Health & Rehabilitative Services, 577 So.2d 565 (Fla.1991), the Florida Supreme Court wrote that it is appropriate for courts to terminate the parental rights of children that have not been abused or neglected where such children have either a sibling or siblings that have been abused or neglected. The court wrote:
In sum, to require a child to suffer abuse in those cases where mistreatment is eventually assured is illogical and directly adverse to society's fundamental policy of preserving the welfare of its growth.
Padgett at 570. This court has also upheld termination of parental rights based upon prospective abuse. Atwell v. Department of Health & Rehabilitative Services, 675 So.2d 1030 (Fla. 5th DCA 1996); Richmond v. Department of Health & Rehabilitative Services, 658 So.2d 176 (Fla. 5th DCA 1995); Williams v. Department of Health & Rehabilitative Services, 648 So.2d 841 (Fla. 5th DCA 1995); Palmer v. Department of Health & Rehabilitative Services, 547 So.2d 981 (Fla. 5th DCA), cause dismissed, 553 So.2d 1166 (Fla.1989). However, we have held that there must be a showing in the record that the behavior of the parent was beyond the parent's control, likely to continue, and placed the child at risk. Denson v. Department of Health & Rehabilitative Services, 661 So.2d 934, 936 (Fla. 5th DCA 1995); In the Interest of T.D., 537 So.2d 173 (Fla. 1st DCA 1989). Examples include a parent who was addicted to drugs, Williams, or who was an untreatable pedophile, Palmer, or who suffered from mental illness, Richmond. None of those factors are present in this case.
DCFS argued that the boys of Roshonda Gaines are at risk because she is an uncontrollable parent and will probably abuse her children because she has abused them in the past. Further, it impliedly argued that she would not protect the boys if they were abused by her new husband, Antonio Gaines. The arguments fail, however, because Roshonda has never abused L.K. or his half sister, baby girl Gaines. In fact, DCFS has never filed a dependency petition for baby girl Gaines, though the facts that caused a dependency petition in L.K.'s case would be the same in the case of baby girl Gaines. DCFS argued at oral argument that L.K. is at risk because he is a boy, and as he gets older it is likely that Antonio Gaines might abuse him because Gaines is not the natural father. It also argued that Gaines would not abuse baby girl Gaines because she is his daughter. See Tolley. The arguments are unsupported by any lay testimony presented to the trial court let alone by expert testimony. DCFS cannot have it both ways: it *194 cannot argue that Roshonda Gaines is an uncontrollable parent who will hurt all of her children, yet allow a child to remain in her care without supervision from the DCFS.
We, therefore, affirm the termination as to the T.K. and W.K., but we reverse as to L.K. Based upon this record, we also reverse the finding of his dependency, since the sole basis was prospective abuse. There was no nexus between the prior abuse of L.K.'s brothers and the allegation of prospective abuse against L.K. Eddy v. Department of Children and Family Services, 704 So.2d 734 (Fla. 5th DCA 1998); Tolley, 667 So.2d at 481; Denson v. Department of Health & Rehabilitative Services, 661 So.2d 934 (Fla. 5th DCA 1995).
Finally, it is clear that termination is not the least restrictive means of protecting the child. L.K. was adjudicated dependent and Roshonda Gaines' parental rights were terminated on the same day. In the petition for dependency and the petition for termination of parental rights, DCFS acknowledges that no voluntary services had been provided to the family to protect L.K. because they were not "appropriate ... due to the prior adjudication of the siblings, and the mother and legal father's arrests and incarceration." The parents have since been released from jail and are living as a family with Baby Girl Gaines. Assuming for a moment the finding of dependency was valid, pursuant to section 39.41, Florida Statutes, the court at least should have considered providing services to the family or placing L.K. with an adult relative who was willing to care for the child before proceeding with the termination of parental rights.
Judgment terminating parental rights as to T.K. and W.K. AFFIRMED; judgment finding L.K. dependent and terminating parental rights as to L.K. REVERSED, and REMANDED for further proceedings.
DAUKSCH, J., concurs.
PETERSON, J., dissents with opinion.
PETERSON, Judge, dissenting.
I respectfully dissent. Section 39.464(1), Florida Statutes (1995) allows the trial court to terminate parental rights when a parent engages in conduct that threatens the life, health or safety of a child's sibling. The majority acknowledges that the mother is incapable of parenting two of her older children by terminating parental rights to them, but disagrees with the trial judge that the youngest male child, L.K., because of the mother's propensities, is potentially exposed to the same ill-treatment experienced by his siblings. I agree with the trial judge that L.K. should not be exposed to the dangers of mistreatment, and disagree with the majority that no action is appropriate unless, or until, L.K. also falls victim to similar acts and omissions by his mother. See Padgett v. Dept. of Health and Rehabilitative Services, 577 So.2d 565 (Fla.1991) (the permanent termination of a parent's rights in one child under circumstances involving abuse or neglect may serve as grounds for permanently severing the parent's rights in a different child).
The dependency of L.K., at the very least, should be affirmed, in order to allow the Department of Children and Families to monitor L.K.'s future treatment by his mother and to require her to enter a performance agreement that would address issues of proper child raising. I do hope that my dissent will not be ignored by the mother and that she will recall it before repeating the conduct that cost her two of her most precious gifts.
NOTES
[1] Each child has a different father other than her husband, Antonio Gaines, and none of the fathers appealed the order terminating their parental rights. Antonio Gaines is the legal father of L.K. but he is not the natural father. He married Roshonda when she was pregnant with L.K. They have one child together, a girl, who has not been adjudicated dependent.
[2] During court proceedings, there was testimony that relatives of L.K. were available to care for the child but that they did not know about his placement in shelter care when his mother was arrested.