724 So.2d 720 (1999)
E.K.B., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, etc., Appellees.
Nos. 98-1240, 98-1027.
District Court of Appeal of Florida, Third District.
February 3, 1999.
Victoria McFadyen, Key West, for appellant.
Robert A. Butterworth, Attorney General, and Fredericka Sands, Assistant Attorney General, for appellee.
Before GERSTEN, GODERICH, and SORONDO, JJ.
GERSTEN, J.
E.K.B. ("appellant") appeals the termination of her parental rights. We affirm.
In September of 1996, the trial court adjudicated child J.B. to be dependent, and J.B. was placed in the temporary custody of the appellee, the Department of Children and Families ("Department"). Thereafter, the Department presented a case plan to E.K.B, the child's mother, which she did not sign.
In January of 1998, the Department filed a petition for termination of parental rights alleging the appellant neglected J.B. and placed J.B. at a substantial risk of imminent abuse or neglect. The petition alleged the appellant was unable to care for J.B. because she suffered from a mental health condition, low intellectual function, and poor insight and judgment. The petition further alleged that the appellant had a history of violent and dangerous behavior as reflected by six Florida Abuse Hotline Reports. Two of the reports involved neglect of her older son and inappropriate sexual behavior toward her niece. Three of the reports were verified for self-neglect of the appellant, as a disabled adult.
At the March 1998 evidentiary hearing, evidence revealed that J.B. had been placed *721 in a shelter at birth based upon the appellant's neglect of her older son in 1994. The appellant was informed that she would probably need to go to a 24-hour-a-day supervised facility if she wanted J.B. to live with her. Instead, between 1996 and 1998, the appellant lived in several different locations with different men whom she reported sexually, physically, and emotionally abused her. At the time of the hearing, the appellant was living with a man who served time for lewd and lascivious behavior for fondling a child under the age of 16.
A foster care counselor who worked for the Department, testified that the appellant used inappropriate language with J.B. during her weekly visits, held him upside down, scratched the child on the face, and on one occasion nearly dropped him in a trash can. The appellant's visitation was thereafter modified to restrict her from being able to hold the child without help from a counselor. The foster care counselor further testified that the appellant showed signs of poor hygiene, had self inflicted cigarette burns on her body, and stated she was sometimes unable to cook without burning herself. The counselor stated that the appellant would be unable to provide her child with needed care, and that the child would be at risk if placed with the appellant. Finally, the counselor stated that the Department was not successful in its attempts to locate a relative for placement, or a facility where the mother and child could live together.
The Department also presented the testimony of a psychologist who had evaluated the appellant. The psychologist concluded that the appellant suffered from an organic mood disorder caused by head trauma obtained in an automobile accident and borderline personality disorder. In the psychologist's opinion, the appellant did not have the potential for future improvement because of the nature of the organic mood disorder problem.
Based upon these facts, the trial court entered an order terminating the appellant's parental rights in April of 1998. Finding that the Department had left "no stone unturned" in exploring reasonable alternatives, and that the child had been "neglected and placed at substantial risk of imminent abuse and neglect by his mother," the trial court's order determined that reunification was not an option and that termination was "in the best interests" of the child.
To justify a termination of parental rights, the State must show by clear and convincing evidence that a parent has abused, neglected or abandoned a child, or that the child is at substantial risk of future abuse, neglect or abandonment. See Gaines v. Department of Children & Families, 711 So.2d 190 (Fla. 5th DCA 1998). Once a trial court determines that the State has met its burden of presenting clear and convincing evidence, such a determination cannot be overturned on appeal unless it is found to be clearly erroneous or lacking in evidentiary support. See Myles v. Department of Health & Rehabilitative Services, 590 So.2d 1053 (Fla. 3d DCA 1991); In Interest of D.J.S., 563 So.2d 655 (Fla. 1st DCA 1990).
Here, we find the record amply supports the trial court's decision to terminate parental rights based upon the mother's history of dangerous behavior, her mental health condition, and her demonstrated poor parenting skills. The legislature has made a policy choice not only to protect children who have been harmed, but also to protect children in substantial and imminent danger of being harmed. See e.g. § 39.464, Fla. Stat. (1997). While it is difficult for any court to conclude that reunification of a family is no longer possible, the ultimate welfare of children must override all other concerns. See Padgett v. Department of Health and Rehabilitative Services, 577 So.2d 565 (Fla.1991); M.F.G. v. Dept. of Children & Families, 23 Fla. L. Weekly D2301, 723 So.2d 290 (Fla. 3d DCA 1998). We find the trial court soundly and appropriately exercised its discretion in considering the best interests of J.B., and accordingly affirm the order below. See Pettit v. State, Department of Health and Rehabilitative Services, 643 So.2d 127 (Fla. 4th DCA 1994); Myles v. Department of Health & Rehabilitative Services, 590 So.2d at 1053.
Affirmed.