812 So.2d 520 (2002)
C.C., mother of A.C., a child, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellee.
No. 1D01-2996.
District Court of Appeal of Florida, First District.
March 25, 2002.
*521 Patricia L. Parker, Jacksonville, for Appellant.
John Slye, General Counsel, Tallahassee and Doris Rompf, Jacksonville, for Appellee.
BENTON, J.
C.C. appeals the order terminating her parental rights to A.C., who was taken from her five days after A.C. was born. We reverse and remand for further proceedings.
The trial court ordered termination of C.C.'s parental rights, concluding it had such authority on multiple grounds: C.C.'s neglect and abandonment of A.C. "for the past 12 months or more"; C.C.'s failure substantially to comply with a case plan; C.C.'s "egregious conduct that endangered the life, health, or safety of A.C. in failing to provide A.C. with "any support, financial or emotional"; C.C.'s conduct toward her other children, held to demonstrate that her continuing involvement as A.C.'s mother threatened A.C.'s "life or well-being" in that C.C. "has not regained custody of the child's older siblings"; and the fact that C.C.'s parental rights had been involuntarily terminated as to one of A.C.'s siblings. See §§ 39.806(1)(c), (e), (f) & (i), Fla. Stat. (2000).
The trial court's finding that "the child has continued to be neglected or abandoned for the past 12 months or more" is clearly erroneous. On October 27, 2000, the Department of Children and Family Services (DCFS) took custody of A.C., who was born on October 22, 2000, based solely on C.C.'s history of drug use. No test showed that C.C. had ingested cocaine while she was pregnant with A.C. or that cocaine or its metabolites had ever entered A.C.'s bloodstream.
A.C. was adjudicated dependent on December 13, 2000. On April 3, 2001, DCFS filed a petition to terminate C.C.'s parental rights as to A.C. The petition did not allege prenatal maternal misconduct as to A.C. After a hearing on June 26, 2001, the court entered an order on July 2, 2001, granting the petition. As A.C. was some eight months old at the time, C.C. did not, because she could not, as the order terminating parental rights erroneously found, have "neglected or abandoned [A.C.] for the past 12 months or more."
C.C. argues for reversal of the order terminating parental rights because she was not afforded the full statutory twelve months to complete her case plan. See § 39.806(1)(e), Fla. Stat. (2000). But DCFS did not proceed below only under section 39.806(1)(e), Florida Statutes (2000). On the other hand, where, as here, DCFS files a petition for termination before the time agreed upon in a case plan for performance, and the petition is "based on the same facts as are covered in the case plan ... then the petitioner must allege and prove by clear and convincing evidence that the parent has materially *522 breached the provisions of the case plan." § 39.802(8), Fla. Stat. (2000).
DCFS did not allege that any breach of the agreement implementing the child welfare case plan was material, and the order terminating C.C.'s parental rights did not so find or conclude. C.C.'s case plan had a stated goal of reunifying A.C. and C.C. with a target and completion date of April 28, 2001. Although DCFS filed its petition before then, on April 3, 2001, DCFS did not allege and the trial court failed to find or conclude that C.C. had "materially breached the provisions of the case plan." § 39.802(8), Fla. Stat. (2000).
The trial court's conclusion that C.C.'s conduct was "egregious" under section 39.806(1)(f), Florida Statutes (2000), as alleged in the petition, also lacks support in the record. The order under review states that C.C.'s conduct was egregious in that she failed to provide A.C. with financial and emotional support, and did not furnish A.C. "necessary food, clothing, shelter and medical care needed for the health, safety and well being of the child." But A.C. never actually lived with C.C. because DCFS took A.C. from her at or near the time of her discharge from the hospital. C.C. had very limited opportunities to contribute to the child's health and well-being. Even so, C.C.'s counselor testified that C.C. visited A.C. "consistently," and brought as gifts several outfits she bought for the child.
The order terminating parental rights made findings under and relied on sections 39.806(1)(c) and (i), as well as sections 39.806(1)(e) and (f), Florida Statutes (2000). The order under review as much as finds that C.C. uses cocaine habitually, finding specifically that she failed to submit to some drug tests; "had several positive drug screens"; "tested positive for cocaine"; failed to attend narcotics anonymous meetings consistently; and "failed to follow through with the recommendation of her substance abuse evaluation." Evidence showed that A.C.'s three older siblings all tested positive for cocaine at their birth, and that C.C.'s parental rights had been terminated as to one of them on that account. Although evidence supports the findings indicating C.C. abuses drugs, other fact findings, including those made pursuant to section 39.810, Florida Statutes (2000) ("Manifest best interests of the child"), are problematic.
A parent's addiction to drugs (which the trial court did not explicitly find in the present case) is an important factor in assessing the risks of prospective harm or abuse, especially when, as may or may not be the case here, the parent refuses treatment for abusing drugs. See S.D. v. Dep't of Children and Family Servs., 805 So.2d 10, 11 (Fla. 3d DCA 2001) (finding prospective abuse or neglect); see also Atwell v. Dep't of Health & Rehabilitative Servs., 675 So.2d 1030, 1031 (Fla. 5th DCA 1996) (finding that mother "was a risk to the child because of her drug addiction" and that her continuing "failure to seek drug treatment is evidence of prospective neglect"); Williams v. Dep't of Health & Rehabilitative Servs., 648 So.2d 841, 843 (Fla. 5th DCA 1995) (noting that "evidence, including Williams' inability to remain drug free or to demonstrate an ability to provide his children a safe environment free of drugs, drug addicts and violence, ... clearly and convincingly showed a likelihood that the children would suffer neglect"); Brown v. Dep't of Health & Rehabilitative Servs., 582 So.2d 113, 115 (Fla. 3d DCA 1991). But see In re C.W.W., 788 So.2d 1020, 1023-24 (Fla. 2d DCA 2001) (holding the fact that a mother exposed a child to a controlled substance during pregnancy does not establish that her rights should be terminated under section 39.806(1)(c)). See generally *523 In re M.F., 770 So.2d 1189, 1194 (Fla.2000) (stating that a single act of abuse of one child does not by itself prove that other children face a substantial risk of imminent abuse and neglect).
A parent's substance abuse does not alone establish "prospective neglect." The trial court must determine whether substance abuse will affect a parent's ability to provide the care and support the children need in the future. Compare In re G., 592 So.2d 778, 778-79 (Fla. 4th DCA 1992) (finding that the mother's great strides towards recovery did not support a finding of prospective neglect), with In re K.C.C., 750 So.2d 38, 41 (Fla. 2d DCA 1999) (finding that the trial court properly terminated the mother's parental rights where the record established that the mother was unwilling to seek treatment for her substance abuse problem). See also Atwell, 675 So.2d at 1031 (finding that the mother's failure to seek drug treatment was evidence of prospective neglect).
Whether or not section 39.806(1)(c) applies, the evidence that C.C.'s parental rights to one of A.C.'s siblings had been involuntarily terminated was uncontroverted. See § 39.806(1)(i), Fla. Stat. (2000) (stating that a petition may be filed for the termination of parental rights when "the parental rights of the parent to a sibling have been terminated involuntarily"); Padgett v. Dep't of Health & Rehabilitative Servs., 577 So.2d 565, 571 (Fla.1991) (holding that "the permanent termination of a parent's rights in one child under circumstances involving abuse or neglect may serve as grounds for permanently severing the parent's rights in a different child" (footnote omitted)).
We nevertheless remand for reconsideration of A.C.'s best interests, in accordance with section 39.810, Florida Statutes (2000), because the fact findings in the order under review are erroneous and incomplete. Full and accurate fact finding is essential not only on the question whether DCFS has authority to terminate parental rights but also on the question whether it is in the child's best interests to do so. See § 39.809(5), Fla. Stat. (2000); In re L.H., 647 So.2d 311, 311-12 (Fla. 5th DCA 1994); see also In re K.M., 788 So.2d 306, 306 (Fla. 2d DCA 2001) (noting that when at least one of the grounds for termination of parental rights has been established, the "issue then is whether the Department of Children and Families proved by clear and convincing evidence the additional requirement that termination is in the manifest best interests of the children"); L.J.R. v. T.T., 739 So.2d 1283, 1287 (Fla. 1st DCA 1999) (stating that in termination of parental rights proceedings, even when statutory requirements are proven, a trial court still "must determine whether termination of parental rights is in the child's `manifest best interests'").
Reversed and remanded.
BROWNING, J., concurs; DAVIS, J., concurs in result only.