ORFINGER, R. B.,
dissenting in part.
I respectfully dissent in part. I do so not because I believe D.E., the father of D.D.E., a seven-year-old child, is a suitable custodian for his son, but rather because I think the trial judge failed to adequately consider placing the child with his paternal grandmother as an alternative to terminating D.E.’s parental rights. As a result, I believe the evidence was insufficient to demonstrate that termination is in the manifest best interests of the child.
Like many dependency and termination of parental rights cases, this case has a long, and somewhat complicated, history. D.D.E. was taken into the custody of the Department of Children and Families (DCF) in 1994 at the age of seven months, following a domestic dispute between his mother and father. Shortly thereafter, DCF filed a dependency petition alleging that D.D.E.’s mother had attacked the father with a knife while he was holding the child. No allegations of misconduct were made regarding the father; however, the petition alleged that the father admitted that he was, at the time, unable to care for the child. At the dependency arraignment, the father waived his right to an attorney and consented to an adjudication of dependency and D.D.E.’s placement with the maternal grandmother. The father was given unlimited visitation. The dependency order required the father to attend parenting classes and pay child support. The child’s situation remained relatively stable until July, 1998 when the maternal grandmother could no longer care for him. The child was then placed in foster care. By this time, D.D.E.’s mother had given birth to three more children by three different men, and these children were also placed in foster care.
In January, 1999, a case plan conference was held. The father was still unrepresented by counsel. Although a case plan was proposed and apparently accepted by some of the mother’s paramours, DCF concedes that the case plan was never signed by the father and that the case plan order did not provide any individualized tasks for him.
In a letter to the court shortly after the case plan conference, the father expressed his desire to obtain permanent custody of D.D.E. Several months later, the court appointed counsel to represent the father. The father’s attorney then moved for a home study of the paternal grandmother’s residence. While DCF found no deficiencies in the home, it recommended against placing the child with the paternal grandmother because it concluded that there was little bonding between the grandmother and the child. DCF further concluded that placing the child with the grandmother would be an obstacle to contact and bonding between D.D.E. and his father. Apparently, the court accepted DCF’s recommendation in November, 2000, and continued D.D.E.’s placement in foster care.
In January, 2001, DCF filed a petition for termination of parental rights, alleging in pertinent part:
5. Within the meaning and intent of F.S. 39.806, petitioner alleges sufficient grounds for termination of parental rights in that:
A. The child have [sic] been abused and neglected by the parents’ fail *866 ure to undertake adequate parental care, contact, concern, supervision and support.
B. Pursuant to F.S. 39.806(l)(b), the parent(s) have abandoned the child as defined in F.S. 39.01(1) or the identity or location of the father is unknown and cannot be ascertained by diligent search within sixty (60) days.
C. Pursuant to F.S. 39.806(l)(c), the parents engaged in conduct toward the child that demonstrates the continuing involvement of the parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental or emotional health of the children irrespective of the provision of services.
D. Pursuant to F.S. 39.806(l)(e), the children [sic] continue to be abused, neglected, or abandoned due to failure of the mother and father to substantially comply with a case plan for a period of twelve (12) months after placement of the children [sic] in shelter or adjudication of the children [sic] as dependent.
Following an adjudicatory hearing on the termination petition, the trial court concluded that D.D.E.’s manifest best interests required termination of the father’s parental rights and entered an order doing so.[1] In part, the trial court’s order found:
C. The father, [D.E.], has failed to substantially comply with a case plan and pursuant to 39.806(l)(e), same is additional evidence of abuse, neglect or abandonment and further demonstrates that the child would be prospectively abused and neglected if placed with the father. The father has failed to com-píete parenting classes, anger management classes, and maintain visitation.
D. The problems and issues that were in existence upon the filing of the original Petition for Dependency as to the children [sic], [D.D.E.], have not been cured or corrected since the time of the filing of this action.
E. There was abuse, abandonment and/or neglect of the children, prior to their removal from the parent’s custody and placement with the Department of Children and Families, based on the •findings made in the Orders of Disposition.
F. The parents, [D.E.] and [R.B.] have abandoned the child as defined in Florida Statute s. 39.01.
This appeal followed.
On appeal, the father raises several issues. First, the father contends that he did not freely and voluntarily waive his right to counsel at the dependency hearing; he did not freely and voluntarily consent to a finding of dependency; and, he was not properly advised by the court that he had a right to court-appointed counsel, if he was indigent.[2] The father’s position is unavailing. The dependency order was rendered in September, 1994. Any appeal of that order should have been taken within thirty days. Fla. R.App. P. 9.110(b). Once more than thirty days has elapsed, the propriety of the dependency order is time-barred. See In re Estate of Schatz, 613 So.2d 591, 592 (Fla. 4th DCA 1993); see also P.B. v. Dep’t of Children & Family Servs., 709 So.2d 590 (Fla. 4th DCA 1998).
But for this procedural bar, I would be sympathetic to the father’s assertion that he never knowingly and intelligently *867 waived his right to counsel. The record indicates that at the dependency arraignment, the father was told that he was not entitled “as a matter of law to [an] attorney,” but did have a right to “hire an attorney to help [him] at all times.” That advice regarding counsel was insufficient. See § 39.465(l)(a), Fla. Stat. (1994). The record also fails to establish that the father was informed of his right to court-appointed counsel, if indigent, at every subsequent stage of the dependency proceedings, as required by statute. Id. These infirmities notwithstanding, while the initial adjudication of dependency may have been flawed by the failure to properly advise the father of his right to counsel, it is not void ab initio. Belflower v. Dep’t of Health & Rehabilitative Servs., 578 So.2d 827, 828 (Fla. 5th DCA 1991). The adjudication of dependency should have been challenged by direct appeal within thirty days of its rendition. The failure to do so leaves the adjudication of dependency standing, although defective as a basis for termination of parental rights. Id.
DCF asserts that the failure to properly advise the father of his right to counsel is irrelevant to these proceedings because its petition for termination of parental rights was based on the father’s abandonment of the child after the adjudication of dependency which, DCF argues, would be unaffected by the prior dependency pro-céedings. That argument, while in part correct, fails to take into account that the trial judge’s order found, among other things, that the father had
failed to substantially comply with the case plan and pursuant to 39.806(l)(e), same is additional evidence of abuse, neglect, or abandonment and further demonstrates the child would be prospectively abused and neglected if placed with the father. The father has failed to complete parenting classes, anger management classes and maintain visitation.
DCF concedes that the record fails to demonstrate that the father was ordered to complete a case plan or advised that he had twelve months to complete it.[3] No case plan was introduced into evidence. Although the trial court’s order found that the father failed to substantially comply with the case plan, the father was never ordered to comply with a case plan. As a result, that finding is not supported by competent substantial evidence. The father’s alleged failure to comply with the case plan could not support a termination of his parental rights.[4]
The trial court also based its order terminating the father’s parental rights on the father’s alleged abandonment of the child. Abandonment is statutorily defined as:
a situation in which the parent or legal custodian of the child ... while being able, makes no effort to communicate with the child, which situation is sufficient to evidence a willful rejection of parental obligations. If the efforts of such parent ... to support and commu *868 nicate with the child are, in the opinion of the court, only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned.
§ 39.01(1), Fla. Stat. (2001). The evidence demonstrates that the father’s visitation with, and support of, D.D.E. was at best, minimal. That supports the trial court’s conclusion that the father lacked any real commitment to his parental duties and abandoned his son.
Next, the father argues that DCF failed to prove by clear and convincing evidence that it was in the manifest best interests of the child to terminate his parental rights. To justify a termination of parental rights, the trial court must determine that termination is in the child’s manifest best interests and that the parent has abandoned, abused, or neglected the child. Kingsley v. Kingsley, 623 So.2d 780, 788 n. 13 (Fla. 5th DCA 1993) (citing In re D.J.S., 563 So.2d 655, 669 (Fla. 1st DCA 1990)). Reviewing the eleven non-exclusive factors set forth in section 39.810, Florida Statutes (2001), the evidence demonstrating that termination is in the child’s manifest best interests is, at best, scant. That evidence consisted primarily of the guardian ad li-tem’s recommendation that parental rights be terminated and DCF’s assurance that it would use its best efforts to find an adoptive home for the child, while at the same time admitting that it would be difficult to find someone to adopt D.D.E. and his siblings.
I believe the trial court failed to adequately consider the paternal grandmother as a suitable permanent placement for the child in the event the court found that the father was an unsuitable custodian. See § 39.810(1), Fla. Stat. (2001).[5] DCF did a home study of the paternal grandmother’s home, but did not recommend placing D.D.E. with his grandmother based on its conclusion that there was little bonding between the grandmother and the child, despite testimony that the grandmother visited the child regularly. The home study revealed nothing negative about the grandmother or her home. The trial court’s order found that the father had never litigated DCF’s conclusions regarding the home study. The trial court also found that there was no evidence presented to show why the child should be placed with the paternal grandmother, and noted that the paternal grandmother had not attended the termination hearing even though she had been in contact with the father as late as the day before the hearing.
Although the home study shows the grandmother’s home to be a suitable placement for the child but for the lack of bonding, the father’s failure to litigate DCF’s recommendation regarding placement with the grandmother as well as the grandmother’s lack of attendance at the termination hearing, seem to have been the basis for the trial court’s conclusion that the grandmother was not a suitable permanent placement for the child. But, it is not the father’s burden to contest the conclusions reached by DCF to prove that there were less restrictive means to protect the child’s welfare short of termi *869 nation. Rather, it was DCF’s burden to prove by clear and convincing evidence that termination of the father’s parental rights was the least restrictive means available to protect D.D.E. See Padgett v. Dep’t of Health & Rehabilitative Servs., 577 So.2d 565, 571 (Fla.1991) (“To protect the rights of the parent and child, we conclude that before parental rights in a child can be permanently and involuntarily severed, the state must show by clear and convincing evidence that reunification with the parent poses a substantial risk of significant harm to the child.”); see also A.C. v. Dep’t of Children & Families, 798 So.2d 32 (Fla. 4th DCA 2001). Because I believe the trial court misapprehended who shouldered the burden of proof, I would find that DCF failed to establish that termination was the least restrictive means available to prevent harm to the child.
Finally, the trial court’s order determined that DCF had proved by clear and convincing evidence that it was in D.D.E.’s manifest best interests that an order terminating the father’s parental rights be entered because the “problems and issues that were in existence upon the filing of the original Petition for Dependency as to the children [sic] [D.D.E.] has [sic] not been cured or corrected since the time of the filing of this action,” and “[t]here was abuse, abandonment and/or neglect of the children prior to their removal from the parent’s [sic] custody and placement with the Department of Children and Families, based on the findings made in the orders of disposition.” The evidence presented at the termination hearing, and a review of the original dependency petition, demonstrate that there were no allegations of misconduct relating to the father. Additionally, the dependency adjudication order and disposition order contained no findings of dependency as to the father. Thus, these findings in the termination order are erroneous. See C.C. v. Dep’t of Children & Family Servs., 812 So.2d 520 (Fla. 1st DCA 2002) (holding that full and accurate fact finding is essential on both questions of whether DCF has authority to terminate parental rights and on question of whether it is in the child’s best interest to do so).
For all of the foregoing reasons, I would reverse the order terminating the father’s parental rights, and remand this matter for further proceedings to determine if placement with the paternal grandmother is a reasonable alternative.

. The order also terminated the mother’s parental rights. That portion of the order was not appealed.

. A predecessor judge handled the dependency proceedings.

. This court asked the parties to supplement the record with a transcript of the case plan conference, but that hearing was not electronically or stenographically reported.

. There is evidence reflecting that the father, while unrepresented, signed a case plan in 1994. This case plan was not included in the record on appeal and does not appear to be the basis of the termination. Rather, the only case plan included in the record on appeal was from 1999; however, that case plan was not signed by the father and the father had no counsel at the time. Perhaps more importantly, there is no evidence that the case plan was discussed with the father by the DCF case worker until February, 2001, one month after the petition for termination of parental rights was filed.

. 39.810. Manifest best interests of the child. In a hearing on a petition for termination of parental rights, the court shall consider the manifest best interests of the child. This consideration shall not include a comparison be.tween the attributes of the parents and those of any persons providing a present or potential placement for the child. For the purpose of determining the manifest best interests of the child, the court shall consider and evaluate all relevant factors, including, but not limited to:
(1) Any suitable permanent custody arrangement with a relative of the child.
§ 39.810(1), Fla. Stat. (2001)