ALTENBERND, Judge.
S.B. (the mother) appeals an order terminating her parental rights to four children. We reverse because the Department of Children and Family Services did not prove the grounds for termination pur *382 suant to section 39.806(l)(e), Florida Statutes (2002). Moreover, because there was no evidence that the youngest child was ever abandoned, abused, or neglected so as to support her continued dependency, we direct the trial court upon remand to immediately reexamine whether this child is dependent.
This case began in November 1998 when the mother’s three older children, S.Q., T.Q. and C.Q., were adjudicated dependent, apparently due to an unknown psychotic episode requiring the mother’s hospitalization. During this episode, the mother was apparently misdiagnosed as schizophrenic. An expert opined that with proper medication the mother could reunite with her children and therefore a case plan was established. It appears that the mother was close to reunification with her three children when she became pregnant with her fourth child, S.B., in the fall of 1999. The case plan was temporarily delayed, in part because it relied upon the mother taking medications that could be harmful if taken while pregnant.
When S.B. was born in June 2000, the child initially remained in the care of the mother. The mother was reevaluated to determine whether she needed to begin taking medications again. The conclusion of the reevaluation was that the mother was not schizophrenic and did not require medications. Although a new case plan was developed, there appears to have been little analysis of whether there was a continued need for dependency and, if so, what specific tasks would be necessary to alleviate that need.
In November 2000, the Department sheltered the youngest child, S.B. The shelter petition alleged that the child was found in the care of a babysitter who was intoxicated. Other record evidence suggests the child was sheltered because a routine urinalysis required of the mother revealed alcohol use. There was no order adjudicating this child dependent, however, until after the Department first proceeded to trial to seek termination of the mother’s parental rights for these four children in June 2001.
In the first trial, the Department sought to terminate the mother’s parental rights pursuant to sections 39.806(l)(c) and (e), Florida Statutes (2001) (allowing termination when continued involvement of parent with children would threaten life, safety, and well-being of children or when children have been adjudicated dependent and continue to be abandoned, abused, or neglected as can be evidenced by noncompliance with case plan for period of twelve months). At the time of this trial, the mother was pregnant and within a month of delivering a fifth child. Judge Lee E. Haworth denied the petition for termination. He recognized that the entire dependency of these children was based upon a “false premise”- — the misdiagnosis of schizophrenia. Judge Haworth expressed his concern that the simultaneous reunification of all four children with the mother could be disastrous. He therefore adjudicated all four children dependent and, in an attempt to place the case back on track, required the entry of a new case plan with a goal of reunification to include twelve very specific tasks for the mother. Moreover, Judge Haworth ordered one of the children returned to the mother within sixty days after the birth of her fifth child, with staggered reunifications of the remaining children thereafter if everything progressed according to plan. The fifth child was born two weeks after the trial.
Judge Haworth entered his written order denying termination and requiring staggered reunification on July 16, 2001. On July 17, 2001, the Department submitted an amended case plan. This case plan set forth 17 very detailed tasks for the *383 mother to complete, modeled on the tasks indicated by Judge Haworth, but much more extensive than that required by the court. Three of these tasks were required only upon reunification of the youngest child with the mother.
No child was ever reunited with the mother. Rather, the Department filed reports indicating its concerns about reuniting the first child, and no further action was taken. Apparently, the case was reassigned to a new judge during this time. Although the mother made significant progress on her case plan until December 2001, thereafter the relationship between the mother and the Department appears to have deteriorated and the mother’s compliance declined. In January 2002, seven months after Judge Haworth’s order, the Department amended the case plan to again pursue a goal of termination and adoption. The Department filed a second petition for termination of parental rights on February 15, 2002, which was granted on May 24, 2002, less than a year after the entry of Judge Haworth’s order denying termination and requiring a new case plan. Although the petition sought termination pursuant to sections 39.806(l)(c) and (e), at trial the Department indicated it was proceeding solely based on section 39.806(l)(e). In the order granting the termination of parental rights, Judge Robert W. McDonald concluded that the Department had established the grounds for termination under section 39.806(l)(e) and detailed the facts supporting his finding that the mother had failed to comply with her case plan thus justifying a termination of her parental rights.
Section 39.806(l)(e) provides:
A petition for termination of parental rights may also be filed when a child has been adjudicated dependent, a case plan has been filed with the court, and the child continues to be abused, neglected, or abandoned by the parents. In this case, the failure of the parents to substantially comply for a period of 12 months after an adjudication of the child as a dependent child or the child’s placement into shelter care, whichever came first, constitutes evidence of continuing abuse, neglect, or abandonment unless the failure to substantially comply with the case plan was due either to the lack of financial resources of the parents or to the failure of the department to make reasonable efforts to reunify the parent and child.
The trial court erred in failing to require the Department to prove the elements required by section 39.806(l)(e) before terminating the mother’s parental rights. Specifically, the Department did not establish that the mother continued to abuse, neglect, or abandon her children by failing to substantially comply with the applicable case plan for a period of twelve months. Rather, the new case plan, which attempted for the first time to address the new reasons for finding the children dependent, was in effect only between July 2001 and May 2002. We therefore reverse the order terminating the mother’s parental rights. See C.C. v. Dep’t of Children & Family Servs., 812 So.2d 520, 521 (Fla. 1st DCA 2002) (reversing termination because trial court’s finding that parent neglected or abandoned child for twelve months was clearly erroneous when trial court terminated parental rights seven months after child was adjudicated dependent); Gaines v. Dep’t of Children & Families, 711 So.2d 190 (Fla. 5th DCA 1998) (reversing termination where Department never offered mother opportunity to abide by performance agreement for at least twelve months).
On remand, we require the trial court to immediately address whether the youngest child, S.B., is a dependent child. *384 See § 39.01(14), Fla. Stat. (2002) (defining dependent child, in part, as one who was abandoned, abused, or neglected or is at substantial risk of imminent abuse, abandonment, or neglect). Although Judge Haworth adjudicated all of the children, including S.B., dependent after the first unsuccessful termination trial, he did so based upon concerns that the mother could not handle all four children being returned at once. He anticipated the children would be reunited with the mother within a short time frame and actually entered a disposition order requiring S.B. be returned to the mother after the birth of her fifth child. At the second termination trial, the guardian ad litem opined that the mother could “probably” handle parenting this child, although she had concerns regarding whether the mother could parent all five children. On remand, if this child is not dependent as defined by section 39.01(14), the child must be returned to the mother.
Because we are reversing the order terminating the mother’s parental rights and remanding for further proceedings, we express concerns regarding the trial court’s findings that the mother was not in substantial compliance with her case plan and that termination was in the manifest best interests of these children. Section 39.01(68) defines “substantial compliance” to mean “that the circumstances which caused the creation of the case plan have been significantly remedied to the extent that the well-being and safety of the child will not be endangered upon the child’s remaining with or being returned to the child’s parent.” In this case, the mother had completed many of the tasks related to improving her parenting skills. The tasks she had not completed related primarily to financial matters, for example, maintaining stable employment and obtaining a GED. There was no indication that the mother’s lack of employment or financial resources ever resulted in the neglect or abuse of the children. To the contrary, the mother had obtained housing appropriate to accommodate all of the children despite her relative poverty. Admittedly, the mother’s decision to have two additional children while her first three children were the subject of dependency proceedings has contributed to her difficulties in complying with a case plan, but it is far from clear that the mother cannot earn the right to regain custody of some or all of the children subject to these proceedings.
Finally, there was little evidence that termination was in the manifest best interests of these children. See, e.g., J.L.C. v. State of Fla., Dep’t of Children & Family Serus. (In the Interest of K.C.C.), 750 So.2d 38 (Fla. 2d DCA 1999) (taking issue with trial court’s finding that termination was in child’s best interest when only evidence about children’s condition showed that they required counseling due to anxiety over separation from their parents). The children’s clinical specialist specifically stated termination was in the children’s interest simply because they needed some kind of permanency. Indeed, the children’s need for permanency was highlighted by the fact that the three older children had been in four or more foster placements. However, the evidence established that the Department had no available plan to provide permanency to these children if their mother’s parental rights were terminated. The current foster parents for these children testified that they would keep the children as foster children for now, but two of the foster homes were unwilling to adopt and the third family could not indicate whether they would adopt or not. Thus, it appears the children’s only hope of permanency may depend upon reunification with their mother if at all possible.
*385 Reversed and remanded for proceedings consistent with this opinion.
WHATLEY and SILBERMAN, JJ„ Concur.