DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**A.D.,** the mother,
Appellant,

v.

**DEPARTMENT OF CHILDREN & FAMILIES** and
**GUARDIAN AD LITEM,**
Appellees.

No. 4D18-3753

[May 30, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jose A. Izquierdo, Judge; L.T. Case No. 2004-8614 DP.

Antony P. Ryan, Regional Counsel, and Paul O'Neil, Assistant Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, West Palm Beach, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Carolyn Schwarz, Assistant Attorney General, Children's Legal Services, Fort Lauderdale, for appellee Department of Children & Families.

Thomasina Moore, Statewide Director of Appeals, Joanna Summers Brunnell, Senior Attorney, Tallahassee, and Douglas J. Glaid, Fort Lauderdale, Florida Statewide Guardian ad Litem Office, for appellee Guardian ad Litem.

WARNER, J.

A mother appeals the trial court's final judgment terminating her parental rights to her son. She does not contest the trial court's determination that grounds for termination exist, but she contends that the court erred in finding that termination was in the manifest best interests of the child. We conclude that certain key findings in the judgment regarding the child's best interests are not supported by competent substantial evidence. We reverse for the trial court to conduct a prompt additional hearing to determine whether termination is in the child's manifest best interests in this unusual case.

In August 2015, the then seven-year-old child, X.P., and his brother were sheltered based on allegations that the appellant's boyfriend engaged in frequent acts of violence and alcohol abuse towards the mother and children. The mother, A.D., consented to a dependency. X.P. went into foster care, and between his removal and the spring of 2016, he was moved from a traditional foster home to a therapeutic foster home. In the summer of 2016, an older sister who lived in Washington State agreed to take both children. X.P. lived with the older sister for a few months, but she found him too difficult to handle. In the fall of 2016, he returned to Florida, where the Department of Children and Families eventually placed him in a level-one therapeutic foster home in Florida City. This home was a multiple-hour drive from Broward County, where he had lived with his mother. X.P. had many challenges and was Baker-Acted at least four times during his foster care, including once while he was in the therapeutic home in Florida City.

Meanwhile, A.D. was given a case plan, but she did not complete many of the tasks. She began by taking a domestic violence course and undergoing a psychiatric evaluation, but other tasks remained incomplete. She visited with X.P. in 2015, but in early 2016, she was arrested for burglary and grand theft. She moved to Illinois to be with family, and then she was extradited to Florida to face other charges. She spent a few months in jail from late 2016 to early 2017. She did not document consistent employment or suitable housing. When X.P. returned to Florida and was placed in the home in Florida City, she visited him only sporadically, as she frequently did not have transportation. Therapeutic visitation sessions were set up, and those which occurred went well, according to the supervisor. Mother and child had a bond between them. But frequently A.D. cancelled visitation sessions. While the child advocate who was responsible for providing services for A.D. did set up some therapy for her, A.D. apparently required trauma therapy. She did not consistently attend therapy sessions, nor did she receive trauma therapy.

Because of the failure to complete her case plan, DCF petitioned for termination of the mother's parental rights as to X.P. DCF listed two grounds: 1) the mother's failure to substantially comply with her case plan under section 39.806(1)(e)(1), Florida Statutes; and 2) her engagement in conduct that demonstrated that her continuing involvement in the parent-child relationship threatened her son's life, safety, well-being, or physical, mental, or emotional health, irrespective of the provision of services, under section 39.806(1)(c), Florida Statutes.

At the final hearing in March of 2018, the principal witnesses for DCF and the Guardian ad Litem Program were the child advocate and the guardian ad litem. Because of the child's placement in Florida City, the child advocate had not seen or talked to the child since the fall of 2016, and the guardian had never met nor spoken with X.P. Instead, a child advocate and guardian located in Miami had taken the responsibility to visit the child. The witnesses at trial merely referred to their reports. These other individuals reported that the child was doing well with the current foster mother and progressing at school. The child advocate did note that X.P. had been Baker-Acted four times since being sheltered, including once after he arrived in Florida City. The child expressed a desire to be with his mother, although he told others that he wanted to stay with his foster mother.

In the final judgment, entered eight months after the hearing, the court found that grounds for termination existed. The mother had failed to complete her case plan, and her continued involvement with the child would be harmful to his safety irrespective of the provision of services because she had failed to use the services provided to her for almost three years. A.D. has not challenged these findings.

A.D. does, however, contend that many of the key findings as to manifest best interests of the child were not supported by competent substantial evidence. "Full and accurate fact finding is essential not only on the question whether DCFS has authority to terminate parental rights but also on the question whether it is in the child's best interests to do so. *See* § 39.809(5), Fla. Stat. (2000)][.]" *C.C. v. Dep't of Children & Family Servs.*, 812 So. 2d 520, 523 (Fla. 1st DCA 2002). Even where the grounds for termination are proven, the court still must determine whether termination of parental rights is in the child's manifest best interests. *Id.*

As to the child's manifest best interests, while the trial court addressed each statutory factor in section 39.810(1)-(11), Florida Statutes (2018), there was no competent substantial evidence to support several key findings. The court found that while the child had a bond with his mother, termination would not harm the child, or the risk of harm from reunification was greater than the harm from termination. However, there was insufficient evidence to make that evaluation, and the mother and child continued to have a bond. While the court faulted the mother for not visiting with more regularity, the child's placement in Florida City was a substantial obstacle for the mother, who did not have a source of transportation. The only real evidence presented on this issue was from the therapeutic visitation supervisor, who confirmed the bond between

mother and child.

The court's finding that it was "unlikely" that the child would remain in long-term foster care is also not supported by competent substantial evidence. The child, age eleven, has significant and severe behavioral problems. He has been through multiple placements and had been Baker-Acted many times. He was not in a pre-adoptive placement, and the child advocate conceded that the child was at risk of languishing in foster care. Therefore, this key finding, that the child would not linger in foster care, is unsupported by the evidence.

A.D. contends the court's findings that the child would "enter into a more stable and permanent family relationship as a result of the termination" and that he was in "a nurturing and loving environment" in his current placement were also unsupported. There was practically no evidence about the condition of the foster home. Although the child advocate and guardian testified that the child was doing much better in that placement and both recommended that termination was in the best interest of the child, neither witness had seen or talked to the child in about two years and talked with the foster parent only occasionally. They were basing their recommendation on the reports of others.

Finally, it is concerning that the court did not enter the final judgment until *eight months* after the hearing. Before the final judgment was entered, several judicial reviews appear in the record which are at significant odds with the findings of the trial court. They show that the child had a behavioral problem at school and frequently had to be removed from class. He was falling behind educationally. And while the social reports show that at first the child seemed to be adjusting well to his foster parent, a report made three weeks prior to the entry of the final judgment states that the foster parent is terminating her care, as the child is doing very badly both at home and at school. Further, there are motions which show that A.D. has finally responded to services, which DCF provided after the hearing. She has improved her condition, and her visits with the child have been more regular. The child expresses a desire to see his mother more often.

While some of these post-hearing reports may not have been seen by the trial court before entering the final judgment, they exemplify how the lives of children are constantly changing. If a court is to wait so long to issue a final judgment in a termination of parental rights case, the court may well need to hold an additional hearing to determine what has transpired in the child's life before entering the ultimate order affecting the

4

child's future. And although the record contains these other reports, our determination that there is no competent substantial evidence to support key findings on X.P.'s manifest best interests is based solely on the evidence presented at the final hearing.

The child is not in a pre-adoptive placement, and the mother contends that it is in his best interests to re-adjudicate him dependent and to give her another case plan. DCF and the GAL point out that one of the primary goals of chapter 39 is to ensure the child's permanent placement with his biological or adoptive family and that no child remains in foster care for more than one year. § 39.001(1)(h), Fla. Stat. (2018). Clearly, at the time of the final hearing, it had been nearly three years from removal, but there is no indication that the child is any closer to permanency or adoption. It is the child's best interests which should be paramount, not the desire to close a case.

Given the lack of evidence on critical issues regarding the child's manifest best interests at the final hearing, we reverse and remand the case for the trial court to hold prompt additional hearings to determine what is in the child's best interests at this time. It may still be that termination is in the child's manifest best interests, but on this record, that case is not made.

*Reversed and remanded for further proceedings.*

FORST and KUNTZ, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***