816 So.2d 684 (2002)
A.B., Mother of A.C., a child, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 5D01-370.
District Court of Appeal of Florida, Fifth District.
April 5, 2002.
Rehearing Denied May 20, 2002.
Ryan Thomas Truskoski, of Ryan Thomas Truskoski, P.A., Orlando, for Appellant.
James A. Sawyer, Jr., Kissimmee, for Appellee.
GRIFFIN, J.
A.B., the mother of A.C., appeals an order terminating her parental rights to her daughter. A.C. was born on September 1, 1999. She was taken into custody by the Department of Children and Families ["DCF"] the following day. The shelter petition alleged that A.C. was in danger of abuse, neglect or abandonment in that a second child, K.B., had been taken from the mother at the age of one month in 1996 due to various medical problems associated with lack of proper feeding and a failure to thrive. The petition further alleged that the mother's parental rights to K.B. had thereafter been terminated due to her failure to comply with a case plan, failure to maintain contact with the child, lack of support, and a history of chronic neglect and abandonment. The petition further alleged that since A.B.'s parental rights to K.B. had been terminated, "the mother has not made any efforts to change her situation...." A.B. had made no provisions for the child's support, had failed to communicate with the child, was unemployed and *685 allegedly was unable to work because she was in the country illegally. The mother admitted that she had no supplies, equipment, clothes or furniture for the child, had received no prenatal care and had no way to support the child.
The child was placed in the temporary custody of DCF, after which the mother visited with the child on two or three occasions through December 10, 1999. On April 18, 2000, DCF moved to terminate the parental rights of A.B. There had never been an adjudication of dependency. As legal grounds for termination, the petition referenced the fact that the mother's parental rights had been involuntarily terminated as to another child and that as to this child, the mother had evinced a "wilful rejection of parental obligations."
A hearing on the petition was conducted on December 5, 2000. The mother did not appear. The trial court entered its order terminating parental rights on January 17, 2001, identifying two grounds as to the mother:
1. The parental rights of the mother were previously involuntarily terminated in regard to a sibling of the above named child.
2. The mother has failed to assume parental responsibilities for the above named child.
Reviewing the entire file of this case, it appears that few facts are in dispute and that termination of the mother's parental rights in this case is fully warranted. The mother's chronic neglect, incapacity to parent and pattern of abandonment are manifest. Indeed, her counsel's main argument at trial was that DCF had not done enough to "teach her to parent, find her a job, provide her housing, and overcome the disability of being an illegal alien." By all accounts, this child, now two-and-one-half years old, is healthy, happy and thriving and has the prospect of adoption into an excellent home with loving and skilled parents.
As appellant points out, the second ground for termination of parental rights in the appealed order appears to rely on the notion of "abandonment" by the mother. Unfortunately, at the time of the filing of this petition, "abandonment" was not a statutory ground for termination of parental rights. "Abandonment" as defined in section 39.01(1) was not added to section 39.806(1)(b) until July 2000.
The other legal ground for termination is contained in section 39.806(1)(i): "when the parental rights of the parent to a sibling have been terminated involuntarily." On appeal, it is urged that this statutory provision is unconstitutional on its face. Very simply, appellant urges that the above-quoted statute, by ostensibly allowing for termination of parental rights without regard to extraneous circumstances, deprives parents of the fundamental liberty interests they have in determining the care and upbringing of their children. DCF responds that the statute does no more than recognize and codify the pronouncements of the Florida supreme court in Padgett v. Department of Health and Rehabilitative Services, 577 So.2d 565 (Fla.1991), where the court answered "yes" to the question whether the prior termination of a parent's rights in one child can support the severing of a parent's rights in another child. Id. at 566. The Padgett court noted that "to require a child to suffer abuse in most cases where mistreatment is virtually assured is illogical and directly adverse to society's fundamental policy of preserving the welfare of its youth." Id. at 570. The Padgett court cited with approval a decision of the Second District Court of Appeal, In re W.D.N., 443 So.2d 493 (Fla. 2d DCA 1984). The Second District there explained that *686 neglect or mistreatment of some children in a family can warrant removal of other children in the family because of the unacceptable risk to these latter children where "the mother's propensities ... were shown to be beyond reasonable hope of modification." Id. at 495. What appears implicit in the recognition of neglect or abuse of other children as a ground for termination of parental rights to a different child is the absence of any factor that would evince a break in the chain of demonstrated parental failure. Otherwise stated, a parent whose rights have been involuntarily terminated as to one child may avoid termination as to another child if he or she comes forward with evidence that the circumstances or pattern of conduct that led to termination of parental rights to the other child cannot serve as a predictor of his or her conduct with the child at issue. In light of the supreme court's opinion in Padgett, in this context, the statute is constitutional.
In this case, one of the things that is clearly established in the record is the mother's unbroken pattern of failure, unwillingness, and incapacity to parent. Although the order itself is a weak effort, the trial court did find, as required by Padgett, that termination of parental rights in this case would be "the least restrictive means of protecting the child(ren) from harm and reunification poses a substantial risk of serious harm to the child(ren)."
AFFIRMED.
PLEUS and PALMER, JJ., concur.