860 So.2d 1084 (2003)
T. P., Mother of D.B., A Child, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 5D02-3671.
District Court of Appeal of Florida, Fifth District.
December 12, 2003.
*1085 Jeffrey L. Dees, Daytona Beach, for Appellant.
*1086 John H. Traphofner, Palatka, for Appellee.
PER CURIAM.
T.P., the mother, appeals the order terminating her parental rights to toddler D.B. The mother asserts that she provided sufficient evidence of substantial changes in her life since the 2000 termination case in which her parental rights to her other five children were terminated to warrant the maintenance of her parental rights to D.B. Accordingly, she asserts that the court erred in terminating her parental rights to D.B. We disagree and affirm.
The mother has given birth to seven children: G.P. (2/7/92); D.J. (12/23/94); E.P. (7/15/96); C.P. (1/10/98); V.P. (she is described as being either six or eleven months old at the time of her death on February 12, 2000); D.P. (7/28/2000); and the child involved in the instant proceedings, D.B. (9/10/01). The 2000 order terminating the mother's rights to D.B.'s half siblings was entered following the death of V.P. The order in the instant case recites the facts of that 2000 case, summarized as follows.
In 1999 and 2000, the mother lived with Victor Hill, an alcohol abuser with a drug habit. Because the mother's care for baby V.P. was less than adequate, Hill took on an active role in caring for V.P. Sometime the evening of January 18, 2000, baby V.P.'s tongue was slashed, leaving a cut so serious that the loss of the baby's tongue was threatened. Only Hill and the mother were present when the baby was cut. There was significant blood loss, yet the mother denied seeing bleeding and did not know what had happened to the baby. She did not inform DCF that Hill lived in the home at any point during DCF's investigation of the incident. Later that same month, the mother's apartment burned down. The mother was referred to Children's Home Society for social services. Again the mother failed to reveal that she was living with Hill.
On February 12, 2000, baby V.P. was killed while in the care of the mother and Hill. The autopsy revealed multiple broken bones in various stages of healing, showing that the baby had been abused for some period of time. The baby would have been in a great deal of pain and would have cried out when moved, yet the mother never sought medical attention for the baby. The medical examiner concluded that the baby died from a fatal blow to the head that fractured her skull, causing a subdural hematoma and massive swelling of the brain. Both Hill and the mother denied knowing what happened to V.P.
The five half siblings were removed from the mother's custody after V.P.'s death. These children's bodies also showed they were the victims of ongoing physical abuse and neglect which, the court in that proceeding found, "was clearly deplorable, flagrant and outrageous by a normal standard of conduct."
The subject of the instant proceeding, D.B., was born seven months after the rendition of the termination order as to the half siblings. DCF removed D.B. from the mother four days after he was born and placed him with his paternal aunt, Stephanie Brinkley, while DCF pursued termination of the mother's rights to him in the instant case. D.B.'s father was incarcerated during this period.[1]
*1087 At the July 31, 2002, termination hearing, testimony regarding the current situation was offered. Ms. Brinkley, testified that she is a counselor for at-risk families and children and is earning her master's degree in counseling. She encouraged the mother to visit D.B. often, advising the mother of the importance of early bonding. Sadly, the mother's visits with D.B. became less and less frequent over the ten months that D.B. was in Ms. Brinkley's care, despite Ms. Brinkley's advice. The mother admitted not often visiting D.B., stating that it was difficult for her to visit D.B. in someone else's house because she felt that D.B. should be with her.
The mother testified that she is unemployed and not looking for a job. She "does hair" for people. Her last employment was a short-lived job at Best Packers. Prior to that, the mother was employed for a short period by the O'Carroll House for Disabled Children. Her employment there was terminated after complaints by an unknown source. The mother is currently facing an eviction action, two child support cases, two county court cases, and one felony charge.
The mother became involved with D.B.'s father, Kevin Brinkley, about two years prior to the hearing. She stated that he has "a little drinking problem," but the bigger problem is the drugs he does.[2] She stayed with Mr. Brinkley even after D.B. was removed from her care because Mr. Brinkley is "no harm to me." In fact, even after Mr. Brinkley was released from incarceration (the record does not reveal the reason for the incarceration), she allowed him back in the home with her. The mother admits that Mr. Brinkley has physically abused her. Mr. Brinkley has lived with the mother as recently as the two-month period before the hearing. A week before the hearing, the mother had moved in with her own father.
When asked what she would like to tell the court to assure the court that the abuse and neglect her other children had suffered would not occur again, the mother stated that she had been trying to make changes. She listed those changes as going to church and "staying away from things that don't mean me any good, by an abusive person." Explaining that since 2000, she had learned that she could only trust herself to take care of her children, the mother stated that she loves all of her children and that D.B. would be safe in her care.
The mother's mother, Clara Phillips, testified that the mother was having a difficult time in 2000, but was doing a great job parenting all of her children. When asked how the mother had changed since 2000, Ms. Phillips stated that the pain of losing her children had made the mother a very good parent. Since 2000, the mother had watched several of Ms. Phillips's grandchildren while at Ms. Phillips's house and had no problems until DCF stepped in and threatened the mothers of those children. Ms. Phillips described the mother as having "an overprotective spirit."
Katherine Walburn, an administrator at Putnam Behavioral Health Care, reviewed the paperwork in the termination file. She could not give an opinion specifically about the mother because she did not examine *1088 her, but she did testify that some of the things reported as fact by the mother "are extremely disturbing." Ms. Walburn stated that if a person who exhibited the behaviors reflected in the file had established a new relationship with a person who had a substance or alcohol abuse problem, that would be a sign that nothing about that person had changed. As evidence of a change in a person who had done what was described in the file, Ms. Walburn would look for the ability to maintain a job and a household and look for evidence that the person was able to delay self-gratification and do things for others first, day after day. She inferred from the mother's diminishing visits with D.B. that the mother had a lack of interest, "which to me goes back to the matter at hand, the interest, the care, the ability to look after and be present for a child and do everything in one's power to protect it, and make sure it's okay."
Following the hearing, the court entered an extensive order terminating the mother's parental rights. It found that "the mother's recent activities and current situation do not demonstrate that she has made any significant changes in her life or pattern of behavior" and that "other factors that might have indicated a positive change in the mother's life are lacking." In explaining our affirmance of this termination order, we address first the standard of review, then the applicable law, and finally, how the law applies to the above facts.
Section 39.809(1), Florida Statutes (2002), provides, "In a hearing on a petition for termination of parental rights, the court shall consider the elements required for termination. Each of these elements must be established by clear and convincing evidence before the petition is granted." In In re Adoption of Baby E.A.W., 658 So.2d 961, 967 (Fla.1995), cert. denied, 516 U.S. 1051, 116 S.Ct. 719, 133 L.Ed.2d 672 (1996), the Florida Supreme Court observed that in reviewing findings of the trial court made under a "clear and convincing" evidentiary standard:
[O]ur task on review is not to conduct a de novo proceeding, reweigh the testimony and evidence given at the trial court, or substitute our judgment for that of the trier of fact. Instead, we will uphold the trial court's finding "[i]f, upon the pleadings and evidence before the trial court, there is any theory or principle of law which would support the trial court's judgment in favor of terminating... parental rights."
Id. at 967 (emphasis added) (quoting Kingsley v. Kingsley, 623 So.2d 780, 787 (Fla. 5th DCA 1993), review denied, 634 So.2d 625 (Fla.1994)); see also N.L. v. Department of Children & Family Servs., 843 So.2d 996, 999 (Fla. 1st DCA 2003) ("Our standard of review is highly deferential. A finding that evidence is clear and convincing enjoys a presumption of correctness and will not be overturned on appeal unless clearly erroneous or lacking in evidentiary support.") (citations omitted).
The petition for termination in the instant case cited two grounds for the termination, sections 39.806(1)(i) and 39.806(1)(f), Florida Statutes. Although the court cited both in its termination order, the mother's arguments generally focus on section 39.806(1)(i) to the exclusion of section 39.806(1)(f). Section 39.806(1)(i) states that parental rights to one child may be terminated when parental rights to a sibling have been terminated involuntarily.[3] The statute essentially creates a presumption *1089 sufficient to support termination that is subject to rebuttal by the parents. Department of Children & Families v. J.H.K., 834 So.2d 298, 299 (Fla. 5th DCA 2002) (citing Department of Children & Families v. B.B., 824 So.2d 1000 (Fla. 5th DCA 2002); A.B. v. Department of Children & Families, 816 So.2d 684 (Fla. 5th DCA 2002)). A.B. recognized that a parent facing the termination of his or her parental rights based on the parent's egregious abuse or neglect of another child must have the right to show that there is no "predictive relationship" between the prior abuse and the prospective abuse:
Otherwise stated, a parent whose rights have been involuntarily terminated as to one child may avoid termination as to another child if he or she comes forward with evidence that the circumstances or pattern of conduct that led to termination of parental rights to the other child cannot serve as a predictor of his or her conduct with the child at issue.
A.B., 816 So.2d at 686. Simply stated, under section 39.806(1)(i), the egregious abuse directed at one sibling is alone sufficient to support the termination of parental rights to another child, "without requiring additional proof to establish a likelihood that remaining children will be abused," B.B., 824 So.2d at 1007 (citing In the Interest of B.S., 697 So.2d 914 (Fla. 2d DCA 1997), review denied, 707 So.2d 1123 (Fla.1998)), but this presumption may be rebutted by an appropriate showing by the parent.
The mother argues that she provided evidence of substantial changes in her life since the 2000 termination case, but the trial court improperly ignored the evidence of these changes. Furthermore, she asserts that DCF did not provide evidence of the mother's current status as opposed to her situation in 2000. Thus, she concludes, DCF failed to demonstrate that the mother's current conditions had not changed or that she was unable to parent D.B.
The mother's argument is without merit. She, not DCF, had the burden to come forward with evidence "that the circumstances or pattern of conduct that led to termination of parental rights to [her other surviving children] cannot serve as a predictor of ... her conduct with [D.B.]." A.B., 816 So.2d at 686. She failed in her burden. In fact, if anything, her testimony and that of the witnesses testifying on her behalf solidified the conclusion that the mother continues to be unfit to parent. The mother has made no positive changes in her life: She is unemployed; she was evicted from one place; she is facing criminal proceedings; and she not only entered into another relationship with an abusive, substance-abusing man, but she continued that relationship even after D.B. was removed from her, even taking the man back into her life after he was released from incarceration. The mother tries to rely on the testimony of her own mother that she is a good parent. However, given that the grandmother was of the opinion that the mother has always been a great parent, we, like the trial court, give her opinion little credence. When pressed, the grandmother identified the mother as having "an overprotective spirit," leaving this court to question exactly where that spirit was when the mother's six other children were being physically abused. *1090 Obviously the grandmother's testimony is not convincing evidence that the mother has changed or that she would or could adequately parent D.B.
The mother also claims that it is DCF's fault that she has not paid child support for D.B. She suggests that DCF threatened the mothers of her nieces and nephews if they continued to allow the mother to care for their children. The mother also blames DCF for the reports the O'Carroll House received that resulted in the termination of her employment there. However, there is no record evidence that DCF in any way interfered with the mother's employment.
Next, the mother contends that the trial court's conclusion that the manifest best interests of D.B. were met by termination was unsupported by competent, substantial evidence. Specifically, the mother argues that the trial court's conclusion that she lacks the current capacity to safely care for D.B. and fails to have the present ability and disposition to provide the child with food, clothing and medical care ignores all of the evidence of the current conditions of her life. She states that even the removal of D.B. from her care was a "knee-jerk reaction" to the 2000 case.
There is little that can be said in response to the mother's position given her refusal to acknowledge reality. She either physically abused her other children or allowed them to be abused while in her custody, and they were removed from her care following the tragic and unnecessary death of her own baby, which occurred while the baby was in her care. She has done nothing to improve her circumstances, and in fact, the evidence shows that she has continued down the same path she was on in 2000. Going to church and feeling pain from the loss of her children are not examples of substantial changes that would support any conclusion other than the one reached by the trial court. The termination order is thus affirmed.
We certify conflict with the Fourth District Court's decision in F.L. v. Department of Children & Families, 849 So.2d 1114 (Fla. 4th DCA 2003), for the reasons discussed supra. We also certify the following questions to be matters of great public importance:
1. IS SECTION 39.806(1)(i), FLORIDA STATUTES, CONSTITUTIONAL, AND IS APPLICATION OF THE REBUTTABLE PRESUMPTION ESTABLISHED IN DEPARTMENT OF CHILDREN & FAMILIES v. B.B., 824 So.2d 1000 (Fla. 5th DCA 2002), AND A.B. v. DEPARTMENT OF CHILDREN & FAMILIES, 816 So.2d 684 (Fla. 5th DCA 2002), NECESSARY TO MAKE IT CONSTITUTIONAL?
2. IS THE LEAST RESTRICTIVE MEANS TEST STILL APPLICABLE IN TERMINATION OF PARENTAL RIGHTS CASES IN LIGHT OF SECTION 39.810, FLORIDA STATUTES?
AFFIRMED.
ORFINGER and MONACO, JJ., concur.
SAWAYA, C.J., concurs and concurs specially, with opinion.
SAWAYA, C.J., concurring and concurring specially.
Although I concur in the decision to affirm the order terminating parental rights in this case, I write to express my views regarding the constitutionality of section 39.806(1)(i), Florida Statutes (2002), explain why I believe that application of a rebuttable presumption under this statute is wrong, and explain why I believe that the least restrictive means test *1091 is no longer applicable in termination proceedings.
Section 39.806(1)(i) provides that parental rights to one child may be terminated when parental rights to a sibling have been terminated involuntarily. The Fourth District Court in F.L. v. Department of Children & Families, 849 So.2d 1114 (Fla. 4th DCA 2003), has recently held section 39.806(1)(i) unconstitutional. The decision in F.L. directly conflicts with our decision in A.B. v. Department of Children & Families, 816 So.2d 684 (Fla. 5th DCA 2002), and with the recent decision rendered by the Second District Court in In re T.S., 855 So.2d 679 (Fla. 2d DCA 2003), which agreed with the conclusion of this court in A.B. that the statute is constitutional. F.L. may also conflict with the decision of the First District Court in C.W. v. Department of Children & Families, 814 So.2d 488 (Fla. 1st DCA), review denied, 823 So.2d 122 (Fla.2002).
In A.B., this court held that section 39.806(1)(i) is constitutional in light of the Florida Supreme Court's decision in Padgett v. Department of Health & Rehabilitative Services, 577 So.2d 565 (Fla.1991). In Padgett, the court specifically held that prior termination of a parent's rights to one child may support the termination of the parent's rights in another child. This court in A.B. explained:
What appears implicit in the recognition of neglect or abuse of other children as a ground for termination of parental rights to a different child is the absence of any factor that would evince a break in the chain of demonstrated parental failure. Otherwise stated, a parent whose rights have been involuntarily terminated as to one child may avoid termination as to another child if he or she comes forward with evidence that the circumstances or pattern of conduct that led to termination of parental rights to the other child cannot serve as a predictor of his or her conduct with the child at issue. In light of the supreme court's opinion in Padgett, in this context, the statute is constitutional.
A.B., 816 So.2d at 686. Subsequently, this court further explained that in light of the holding in A.B., "evidence of a prior termination of parental rights created what was in effect a presumption sufficient to support termination, but which was subject to rebuttal by the parents" who "have the right to show the lack of a predictive relationship between the past abuse of one child and the prospective abuse of another." Department of Children & Families v. B.B., 824 So.2d 1000, 1008 (Fla. 5th DCA 2002) (footnote omitted); see also Department of Children & Families v. J.H.K., 834 So.2d 298, 299 (Fla. 5th DCA 2002) (citing B.B.). This court did not explain whether this presumption shifted the burden of going forward with the evidence or shifted the burden of proof.
According to the Fourth District Court in F.L., section 39.806(1)(i) is unconstitutional because it improperly "shifts to the parent the burden of showing that current conditions are unlike those of the past and that reunification will not pose a substantial risk of harm to the child." 849 So.2d at 1124. The court in F.L. reasoned that "[t]o pass constitutional muster Padgett requires the state to prove that reunification with the current child would pose substantial risk to the child." Id.
I fully concur in the result reached by this court in A.B. that section 39.806(1)(i) is constitutional, but respectfully disagree with the creation of a rebuttable presumption in order to make it so. In my view, the provisions of section 39.810, Florida Statutes, make the creation of such a rebuttable presumption unnecessary and make the reasoning in F.L. erroneous. But before I explain further, I emphasize *1092 that the Florida Supreme Court has made clear that the best interests of the child trump the very important rights of parents to parent their offspring. In Padgett, the court explained:
In fact, "the only limitation on this rule of parental privilege is that as between the parent and the child the ultimate welfare of the child itself must be controlling." Id.

While Florida courts have recognized the "God-given right" of parents to the care, custody and companionship of their children, it has been held repeatedly that the right is not absolute but is subject to the overriding principle that it is the ultimate welfare or best interest of the child which must prevail.

In re Camm, 294 So.2d 318, 320 (Fla.), cert. denied, 419 U.S. 866, 95 S.Ct. 121, 42 L.Ed.2d 103 (1974). While the parent's interest in maintaining parental ties is essential, the child's entitlement to an environment free of physical and emotional violence at the hands of his or her most trusted caretaker is more so. The state has a compelling interest in protecting all its citizensespecially its youthagainst the clear threat of abuse, neglect and death.
577 So.2d at 570. Application of this principle is exemplified by our decision in K.E. v. Department of Children & Families, 816 So.2d 838 (Fla. 5th DCA 2002). In K.E., the mother's parental rights were terminated. This court, after noting that she did not argue that sufficient grounds had not been established for termination, stated:
Rather, she argues that she deserves another chance because she has successfully completed drug treatment, she has held down a job, and she is close to the children. In response, the DCF suggests that the trial court should be affirmed on this point because termination was in the manifest best interests of the children. We agree with the DCF. See M.B. v. Dep't of Children and Families, 739 So.2d 716, 717 (Fla. 5th DCA 1999) ("her good intentions for the future do not overcome her past neglect of her children ..."); see also Williams v. Dept. of Health and Rehabilitative Services, 648 So.2d 841 (Fla. 5th DCA 1995) ("a parent's drug addiction is evidence of prospective neglect"); In the Interest of J.L.P., 416 So.2d 1250, 1253 (Fla. 4th DCA 1982) ("[o]ur sympathy for the mother cannot blind us to the overriding concern for the welfare of the child").
816 So.2d at 839. The general principle that the welfare of a child is more important and significant than a parent's right to parent that child has been repeated far too often to justify further citation of authority to support it.
Subsequent to Padgett and in recognition of the overriding importance of protecting the welfare of children, the Florida Legislature in 1994 enacted section 39.4612, Florida Statutes, which was renumbered in 1998 as section 39.810, Florida Statutes. This statute is entitled "Manifest best interests of the child" and provides in pertinent part that "[i]n a hearing on a petition for termination of parental rights, the court shall consider the manifest best interests of the child." (Emphasis added). Section 39.802(4), Florida Statutes, requires that a petition for termination allege the factual grounds for termination under section 39.806 and that termination is in the manifest best interests of the child under section 39.810.
In every termination case, it is the Department's burden to establish by clear and convincing evidence that termination of parental rights is in the manifest best interests of the child under section 39.810. L.O. v. Florida Dep't of Children & Family *1093 Servs., 807 So.2d 810 (Fla. 4th DCA 2002); In re K.M., 788 So.2d 306 (Fla. 2d DCA 2001); In re K.C.C., 750 So.2d 38 (Fla. 2d DCA 1999); see also C.C. v. Department of Children & Family Servs., 812 So.2d 520 (Fla. 1st DCA 2002). Failure to properly consider the manifest best interests of the child under section 39.810 constitutes reversible error. See K.O. v. Department of Children & Families, 843 So.2d 353 (Fla. 5th DCA 2003); K.M. v. Department of Children & Families, 795 So.2d 1129 (Fla. 5th DCA 2001). Hence, a termination proceeding is essentially a two-part process: 1) the trial court must find by clear and convincing evidence that one of the grounds in section 39.806 has been established; and 2) the Department must establish by clear and convincing evidence, and the trial court must specifically find in the order of termination, that the manifest best interests of the child requires termination of parental rights under section 39.810, Florida Statutes. Rathburn v. Department of Children & Families, 826 So.2d 521 (Fla. 4th DCA 2002); L.O.; see also A.A. v. Department of Children & Families, 852 So.2d 318 (Fla. 4th DCA 2003); In re T.B., 819 So.2d 270, 273 (Fla. 2d DCA 2002) (noting that manifest best interests finding is an essential predicate to terminate parental rights) (citation omitted); K.C.C., 750 So.2d at 41 (observing that the finding that termination is in the manifest best interests of the child is "an essential predicate for the termination of parental rights"). As the court summarized in N.L. v. Department of Children & Family Services, 843 So.2d 996, 999 (Fla. 1st DCA 2003), "[w]e are obliged to affirm the termination of parental rights if DCFS has met its burden to present clear and convincing evidence of a statutory ground for terminating parental rights, along with clear and convincing evidence that terminating parental rights is in the best interests of the child." (Citation omitted).
Section 39.810 requires the trial court to consider and evaluate all relevant factors in determining whether termination is in the manifest best interests of the child and specifically lists eleven non-exclusive factors that must be considered in making that determination. The first five factors that must be considered are of particular importance to this discussion, and they are the following:
(1) Any suitable permanent custody arrangement with a relative of the child.
(2) The ability and disposition of the parent or parents to provide the child with food, clothing, medical care or other remedial care recognized and permitted under state law instead of medical care, and other material needs of the child.
(3) The capacity of the parent or parents to care for the child to the extent that the child's safety, well-being, and physical, mental, and emotional health will not be endangered upon the child's return home.
(4) The present mental and physical health needs of the child and such future needs of the child to the extent that such future needs can be ascertained based on the present condition of the child.
(5) The love, affection, and other emotional ties existing between the child and the child's parent or parents, siblings, and other relatives, and the degree of harm to the child that would arise from the termination of parental rights and duties.
§ 39.810(1)-(5), Fla. Stat. (2002).
I find these factors particularly significant in light of the reasoning of the Fourth District Court in F.L. and the reasoning of this court in A.B., B.B., and J.H.K. In A.B., B.B., and J.H.K., this court held that section 39.806(1)(i) creates a presumption for termination which may be rebutted if *1094 the parent "comes forward with evidence that the circumstances or pattern of conduct that led to termination of parental rights to the other child cannot serve as a predictor of his or her conduct with the child at issue" or, in other words, if the parent establishes factors "that would evince a break in the chain of demonstrated parental failure." A.B., 816 So.2d at 686. The court in F.L. held that shifting this burden to the parents makes the statute unconstitutional. In my view, such evidence is subsumed within the factors found in section 39.810 that must be considered by the trial court when the Department attempts to meet its burden of establishing by clear and convincing evidence that termination is in the manifest best interests of the child. Therefore, there is no need for the rebuttable presumption established by the decisions from this court. Accordingly, in my view, this court's reasoning in A.B., B.B. and J.H.K. is wrong and both the reasoning and result reached by the Fourth District Court in F.L. are wrong.
For example, in termination proceedings under section 39.806(1)(i), the termination of parental rights to other children that were abused or neglected by the parents must be established by clear and convincing evidence. Next, the trial court must consider under section 39.810(3), whether those same parents now have the capacity to properly care for the child at issue in the current proceedings "to the extent that the child's safety, well-being, and physical, mental, and emotional health will not be endangered upon the child's return home." A finding by the court that the parents are not capable of doing so necessarily means that the "chain of demonstrated parental failure" continues and that the parents' prior conduct of abuse and neglect is a good predictor of their treatment of the child at issue. On the other hand, a finding by the trial court that the parents are now capable of properly caring for the child at issue necessarily means that "a break in the chain of demonstrated parental failure" has been established and that the prior abuse and neglect is not a predictor of the parents' treatment of the child at issue.
Equally important, in the part of the proceeding where the Department must present evidence to comply with its burden of establishing by clear and convincing evidence under section 39.810 that the best interests of the child require termination of parental rights, the parents will have the opportunity, if they wish, to present evidence to show that the manifest best interests of the child do not require termination. The parents may present evidence that they have changed, that they can now properly care for the child, and that what happened in the past is not an accurate predictor of future abuse or neglect. In any event, the burden remains on the Department to establish that termination is in the child's manifest best interests.
Moreover, a finding that termination is in the manifest best interests of the child must trump any finding that there may be less restrictive alternatives to termination. In other words, if the court finds under section 39.810 that the manifest best interests of the child require termination, because the best interests of the child trumps parental privilege, there can be no finding that there are less restrictive alternatives to termination. On the other hand, if the trial court finds that the manifest best interests of the child require that termination not be granted, there is no need to consider less restrictive means. I, therefore, conclude that application of section 39.810 renders the less restrictive means test obsolete, unnecessary, and meaningless.
*1095 The definition of "least restrictive means" supports my view. In B.B., this court held:
The "least restrictive means" test, which comes out of Padgett, is not intended to preserve a parental bond at the cost of a child's future. Rather, as can be seen from the context of Padgett, it simply requires that measures short of termination should be utilized if such measures can permit the safe re-establishment of the parent-child bond.
824 So.2d at 1009. The "safe re-establishment of the parent-child bond" is one of the factors the trial court must consider under section 39.810, particularly section 39.810(3). Therefore, the least restrictive means test is subsumed in the factors that must be found by clear and convincing evidence to exist under section 39.810. Hence, there is no reason to apply the least restrictive means test any longer and there is no need for a rebuttable presumption in termination cases under section 39.806(1)(i). Because under section 39.810 the Department carries the burden of establishing that termination is in the manifest best interests of the child, the concerns expressed in F.L. are virtually nonexistent and are not sufficient grounds to hold section 39.806(1)(i) unconstitutional.
In the instant case, the final judgment of termination clearly shows that the trial court properly and adequately considered all relevant factors under section 39.810 and concluded that the manifest best interests of the child require termination. There is substantial competent evidence in the record to support this conclusion. Because the Department met its burden of establishing, by clear and convincing evidence, a sufficient ground for termination under section 39.806(1)(i), and that the manifest best interests of the child require termination, and because the statute is constitutional, we have no alternative but to affirm. The rebuttable presumption and the least restrictive means test should have no place in the legal analysis leading to this conclusion. Nevertheless, we are bound by prior decisions from this court and so we have applied them.
NOTES
[1] The mother argues that it was error to terminate her parental rights without also terminating the rights of D.B.'s father, Kevin Brinkley. She asserts an "all or nothing" approach to termination of parental rights, arguing that termination of her rights is not the least restrictive means of protecting D.B. given that Mr. Brinkley may never have his rights terminated. There is no merit in this argument. Mr. Brinkley was served with a petition for dependency and termination. The trial court found D.B. dependent based upon Mr. Brinkley's substance abuse problems and the mother's egregious abuse of D.B.'s half siblings. Whether Mr. Brinkley's parental rights are terminated remains to be determined.
[2] Mr. Brinkley's own mother substantiated the testimony that her son has a drinking problem and is abusive.
[3] The Fourth District Court in F.L. v. Department of Children & Families, 849 So.2d 1114 (Fla. 4th DCA 2003), has recently held section 39.806(1)(i) unconstitutional. The decision in F.L. directly conflicts with our decision in A.B. v. Department of Children & Families, 816 So.2d 684 (Fla. 5th DCA 2002), and with the recent decision rendered by the Second District Court in In re T.S., 855 So.2d 679 (Fla. 1st DCA 2003), which agreed with the conclusion of this court in A.B. that the statute is constitutional. F.L. may also conflict with the decision of the First District Court in C.W. v. Department of Children & Families, 814 So.2d 488 (Fla. 1st DCA), review denied, 823 So.2d 122 (Fla.2002).