STRINGER, Judge.
A.D. and L.D., the parents, seek certio-rari review of the trial court’s interlocutory order compelling the parents to submit to mental examinations after their two young children had been sheltered because the younger child was admitted to the hospital with symptoms of shaken baby syndrome. The parents argue that the trial court departed from the essential requirements of the law in requiring the mental examinations under section 39.407(14), Florida Statutes (2003), and Florida Rule of Juvenile Procedure 8.250(b). The parents also argue that such examinations would violate *237 their Fifth Amendment privilege against self-incrimination.
In order to merit certiorari review, a nonfinal order must cause material injury to the petitioner that cannot be remedied on direct appeal. Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1099 (Fla.1987). If this threshold requirement is met, then certiorari will only be granted when the order amounts to a departure from the essential requirements of the law. Id. A departure from the essential requirements of the law occurs “when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.” Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 889 (Fla.2003).
This court has held that interlocutory orders that improperly require mental examinations cause material injury to the petitioner that cannot be remedied on direct appeal. Gonzalez v. State, 829 So.2d 277, 279 (Fla. 2d DCA 2002); Vo v. Bui, 680 So.2d 601, 601 (Fla. 2d DCA 1996); Gasparino v. Murphy, 352 So.2d 933, 935 (Fla. 2d DCA 1977). Thus, the parents have satisfied the threshold jurisdictional inquiry in this case. The parents allege that the trial court’s order departed from the essential requirements of the law in two respects.
First, the parents argue that the trial court departed from the essential requirements of the law in requiring the mental examinations under section 39.407(14) and rule 8.250(b). Both provisions provide that the court may order a person seeking custody of a child to submit to a mental examination when the mental or physical condition of the person “is in controversy” and the party seeking the examination shows “good cause” for the examination. § 39.407(14); Fla. R. Juv. P. 8.250(b). The “in controversy” and “good cause” requirements are also included in Florida Rule of Civil Procedure 1.360(a), which provides for mental examinations in civil actions.
In a case involving a mental examination of a father in a dissolution modification action, this court explained the “in controversy” requirement under rule 1.360(a).[1] See Williams v. Williams, 550 So.2d 166 (Fla. 2d DCA 1989). For a parent’s mental health to be “in controversy,” “the condition must directly involve a material element of the cause of action.” Id. at 167. But see In re T.M.W., 553 So.2d 260, 262-63 (Fla. 1st DCA 1989) (assuming the. parent’s mental condition was in controversy because custody was at issue); In re S.N., 529 So.2d 1156, 1159 (Fla. 1st DCA 1988) (holding that the mother’s mental condition was implicated in a dependency proceeding without further analysis).
In Gasparino v. Murphy, 352 So.2d 933 (Fla. 2d DCA 1977), this court engaged in an in-depth examination of the “in controversy” requirement of rule 1.360(a). The petitioner was a police officer who was a defendant in a wrongful death action. Id. at 934. The police officer had stabbed the decedent after the decedent pulled a knife on the police officer and attempted to stab him in the neck. The complaint alleged negligence and use of excess force. The respondent sought a mental examination to determine the police officer’s state of mind or whether he had any mental problems at the time of the shooting. In quashing the order requiring the mental examination under rule 1.360(a), this court held that the police officer’s mental state was not at issue in the litigation. Id. at 935. The *238 court concluded, “While petitioner’s mental state may shed some light on why he acted as he did, it is not involved in either establishing the standard of care or in determining whether or not it has been violated.” Id.
Assuming the allegations in the Department’s motion for mental examination are true, the parents’ mental state may shed some light on why one or both of them shook their infant daughter. However, the parents’ mental state is not involved in establishing whether they abused the younger child, G.D., or failed to prevent abuse in such a way that would require termination of their parental rights as to G.D. There are no allegations that either parent has a mental disability or condition that would cause them to either shake the baby or prevent such conduct.
However, the parents’ mental state may be at issue in establishing whether to terminate the parental rights of G.D.’s older sibling, C.D.,[2] based on the abuse of G.D. The court may not terminate parental rights based on the abuse of a sibling without a finding of a nexus between the abuse and the prospective abuse. O.M. v. Dep’t of Children & Family Servs. (In re G.C.A.), 863 So.2d 476 (Fla. 2d DCA 2004) (citing R.F. v. Dep’t of Children & Families (In re M.F.), 770 So.2d 1189 (Fla.2000)); see also C.M. v. Dep’t of Children & Families (In re C.M.), 844 So.2d 765, 766 (Fla. 2d DCA 2003) (“Children who have not been abused may be adjudicated dependent based on abuse inflicted upon their siblings; however, the evidence must demonstrate a nexus between the abuse and any prospective abuse to another sibling.”). But see T.P. v. Dep’t of Children & Families, 860 So.2d 1084, 1089 (Fla. 5th DCA 2003) (holding that parental rights may be terminated based on the egregious abuse of a sibling without a showing of a nexus but providing that the parent should be afforded the opportunity to show a lack of a nexus).
“Generally, this nexus is established when the parent has a mental or emotional condition that will continue, such as mental illness, drug addiction, or pedophilia, and which will make it highly probable that in the future the parent will abuse or neglect another child.” C.M., 844 So.2d at 766; see also Gaines v. Dep’t of Children & Families, 711 So.2d 190, 193 (Fla. 5th DCA 1998) (holding that in order to support a termination of parental rights based on prospective abuse it is necessary to show that the “behavior of the parent was beyond the parent’s control, likely to continue, and placed the child at risk,” and citing as an example the parent’s mental illness).
Thus, when the Department seeks to terminate the parental rights of C.D., the mental state of the parents may be placed in issue. However, the parents’ mental state is not at issue until the petition for termination containing the pertinent allegations is filed. Because the Department has not yet filed a petition for termination of parental rights containing allegations that place the parents’ mental state in issue, the trial court departed from the essential requirements of the law in compelling the parents to submit to a mental examination.
The parents’ second basis for a departure from the essential requirements of the law is that a mental examination would violate their Fifth Amendment privilege against self-incrimination because statements taken during the examination could be used at a subsequent criminal trial. The parents’ objection to the court’s order compelling a mental examination on this *239 issue is not to the act of ordering the examination, but to the potential questions that may be asked at the examination. However, by merely compelling the examination, the court has not interfered with the parents’ Fifth Amendment rights. The court’s order does not in any way preclude the parents from refusing to answer questions during the examination on Fifth Amendment grounds. Furthermore, any harm that might result from a violation of the parents’ Fifth Amendment rights in the mental examination could subsequently be cured by having the offending information excluded at trial. Thus, the trial court’s order did not depart from the essential requirements of the law on this basis.
Petition granted; order quashed.
ALTENBERND, C.J., and VILLANTI, J., concur.

. The case probably did not proceed under Florida Rule of Juvenile Procedure 8.250(b) because visitation, not custody, was at issue.

. At the time they were sheltered, G.D. had just turned one, and C.D. was two years old.