879 So.2d 82 (2004)
C.B., the mother, Appellant,
v.
DEPARTMENT OF CHILDREN & FAMILIES, Appellee.
No. 4D04-437.
District Court of Appeal of Florida, Fourth District.
August 4, 2004.
*83 Pamela Wynn, Lake Worth, for appellant.
Jeffrey Dana Gillen, West Palm Beach, for appellee.
STONE, J.
C.B. (the mother) appeals the termination of her parental rights as to J.M., born six months after her parental rights were terminated as to her three other children. All the children have the same father, whose parental rights have also been terminated. The first three children have been adopted by relatives.
The order terminating parental rights to J.M. is based on a finding that the mother's behavior is beyond reasonable hope of modification and that termination is in the best interest of J.M. We affirm.
The Department of Children & Families ("Department") first received reports of child abuse, involving both the mother and the father, in November of 1997 when their (then) two children, S.B. and E.M., were observed having bruises on their faces and backs. Two adult-sized bite marks were also observed on S.B.'s arm and back.
The children were placed with their grandmother, but while in her custody, Department received more reports of abuse inflicted by the father. The father was arrested and charged with child abuse. While the mother was never found to have directly abused the children, Department recommended the children's dependency based on the mother's unwillingness to protect the children from the abuse.
As part of her case plan, the mother attended classes, underwent evaluations and therapy, and received various services from Department. The mother then gave birth to a third child, Ed.M. At that time, the court denied Department's petition to shelter Ed.M., but ordered that there be no contact between the father and either Ed.M. or the mother. Subsequently, the mother was reunited with S.B. and E.M.
In October 2001, Department received more reports of abuse. An examination of one of the children resulted in the discovery of "25 distinct loop, linear and square marks with significant breaks on the skin." Another child was found to have a dislocated shoulder and rib fractures, and while the mother told the doctors that the child had fallen off of a tricycle, doctors found the injuries inconsistent with the mother's explanation.
Following his birth, the mother acknowledged that J.M. had the same father as her three prior children. Notwithstanding the court's order, the mother and the father continued to maintain their relationship; therefore, J.M. was immediately sheltered with a maternal grandmother and the mother was given limited, supervised visitation rights. Department filed a petition to terminate the mother's parental rights to J.M. on an expedited basis, with no case plan or goal of reunification, based on the family's history of abuse. In September 2003, Department discovered that the maternal grandmother left J.M., without supervision, in the care of the mother. As a result, J.M. was placed with the aunt and uncle, who had recently adopted the other three children, and had since expressed a willingness to also adopt J.M.
*84 At the hearing on the petition to terminate, a licensed psychologist testified that his psychological evaluation of the mother determined that the mother lacked the adequate psychological resources to cope with day-to-day problems, that she tended to inappropriately express anger, and that she displayed signs of depression. The psychologist further testified that the mother's enduring personality characteristics placed J.M. at a high risk for abuse. These included symptoms of "narcissistic, paranoid, schizoid, and antisocial" personality disorders which often resulted in a difficulty delaying self-gratification. The symptoms also included an inability to take responsibility for mistakes, unresolved anger and resentment, as well as the mother's continued engagement in abusive and dependent relationships with men. Although the witness acknowledged that the mother had some reasonable hope of partial recovery with the help of medication therapy, the psychologist provided no indication that J.M. would be protected in the foreseeable future.
A department counselor also testified and recommended termination of parental rights, based upon the family's long history of abuse. Specifically, as the mother appeared to be again living with the father, and refused to comply with orders not to engage in unsupervised visits with J.M., the counselor testified that the circumstances under which the parental rights to S.R., E.M., and Ed.M. had been terminated, remained unchanged.
We conclude that the trial court acted reasonably in finding, due to the likelihood of prospective abuse under 39.806(1)(f), Florida Statutes, that termination of parental rights was in the best interest of J.M. See §§ 39.810(1)-(11), Fla. Stat. (2003).
A trial court has broad discretion regarding the termination of parental rights and an appellate court may not disturb an order so long as it is based on competent and substantial evidence. N.L. v. Dep't of Children & Families, 843 So.2d 996, 999 (Fla. 1st DCA 2003).
Section 39.806, Florida Statutes, provides Department with numerous avenues by which to pursue a claim for termination of parental rights.
Pursuant to section 39.806(1)(f), parental rights may be terminated if the parent engaged in "egregious conduct" or "had the opportunity and capability to prevent and knowingly failed to prevent egregious conduct that threatens the life, safety, or physical, mental or emotional health of the child's sibling." This court has interpreted section 39.806(1)(f) to also require Department to prove that reunification with the parent poses a substantial risk of harm to the child, regardless of past abuse to that child's siblings. See J.F. v. Dep't of Children & Families, 866 So.2d 81, 86 (Fla. 4th DCA 2004). See also F.L. v. Dep't of Children & Families, 849 So.2d 1114, 1122 (Fla. 4th DCA 2003)(holding "[Department] carries the burden not only to establish a ground for termination but the continuing substantial risk of harm to the current child"). The issue in prospective abuse cases is whether future behavior, which will adversely affect the child, can be "clearly and certainly predicted" and whether "the behavior of the parent was beyond the parent's control, likely to continue, and placed the child at risk. D.H. v. Dep't of Children & Families, 769 So.2d 424, 427 (Fla. 4th DCA 2000)(quoting Gaines v. Dep't, 711 So.2d 190, 193 (Fla. 5th DCA 1998)). See L.B. v. Dep't of Children & Families, 835 So.2d 1189, 1193-94 (Fla. 1st DCA 2002); In Re J.L., 824 So.2d 1023, 1025 (Fla. 2d DCA 2002).
In T.P. v. Dep't of Children & Families, 860 So.2d 1084, 1086 (Fla. 5th DCA 2003), *85 the court affirmed an order terminating parental rights to one child after rights had already been terminated to five other children, notwithstanding the mother's argument that she had produced evidence of substantial change in her life. In that case, five previous children were injured while in the care of the mother and an abusive boyfriend. Id. At the time of the hearing, regarding her sixth child, the mother was living with another man, whom she admitted physically abused her. Id. at 1088. Despite telling the court that counseling had helped her to stay away from men who exhibited violent behaviors, and that she loves all of her children, the appellate court recognized that there was substantial evidence that the mother had not made any significant changes in her life or circumstances. Id. at 1089.
We have considered C.W.W. v. Department of Children and Families, 788 So.2d 1020, 1021 (Fla. 2nd DCA 2001), where the court reversed a termination of parental rights after the child was born addicted to cocaine and the mother admitted to a serious substance abuse problem. There, the Second District concluded that the mother's conduct did not rise to the level of egregiousness intended in section 39.806(a)(f), Florida Statutes, because there was no evidence that the mother could not resolve the issues or that she had ever attempted any type of drug treatment program. Id. at 1024. Further, while recognizing that Department "is not required to offer every parent a case plan with a goal of reunification," there was no evidence that the mother in that case had ever been offered a case plan in the past, much less failed to comply with one. Id. at 1024.
Here, the facts are similar to those in T.P., as in both cases, a mother continued to maintain abusive relationships, that resulted in child abuse, and proved incapable or unwilling to protect the safety of her children. Here, as in T.P., the mother continues the relationship with the abusive father, as there is evidence that the two were together just days prior to the hearing and had been living together within the two months before the hearing.
Here, unlike in C.W.W., the mother has been afforded opportunities to prove her ability and willingness to change. Additionally, while the C.W.W. court found the mother had not engaged in egregious conduct, in this case, as stated by the trial court, "[i]t is inconceivable how [the mother], who has been a nursing assistant ... could not see 25 loop marks on [S.B.] or be aware of the pain the child [Ed.M.] must have experienced with his fracture."
In addition to the grounds for termination, the record reflects that the trial court also took into account the manifest best interests of the child. Section 39.810, Florida Statutes, provides various factors the trial court must consider when evaluating the manifest best interests of a child, including alternative permanent custody arrangements with relatives, the capacity of the parent to care for the child, the depth of the bond formed with the parent, the likelihood that the child will form a significant bond with another caretaker, and the recommendation of the guardian ad litem. Further, Department must establish that termination is the least restrictive means by which to protect the child. Padgett v. Dep't of Health & Rehabilitative Services, 577 So.2d 565, 571 (Fla.1991). But see T.P. (where the court suggests that section 39.810, Florida Statutes, "renders the less restrictive means test obsolete, unnecessary, and meaningless"). The supreme court has recognized that, in case of severe or continuing abuse or neglect, *86 the immediate termination of parental rights may be the least restrictive means available. In the Interest of T.M., 641 So.2d 410, 413 (Fla.1994).
The court found Department met its burden to establish, by clear and convincing evidence and considering the applicable provisions of section 39.810, Florida Statutes, that termination of parental rights was in the child's manifest best interest and the least restrictive means of protecting the child.
The court, among other things, found that the mother did not have the capacity to safely care for or protect J.M., that J.M. had bonded with his current parental substitute and siblings, and that there was little likelihood of J.M. remaining in long-term foster care. The court also took into account the guardian ad litem's recommendation. Further, while there may have been other suitable relatives available to care for J.M., the record indicates that such an arrangement would not be in J.M.'s best interest, as the other relatives, in the past, gave little credence to court orders to allow the mother only supervised visits with J.M. Therefore, the court reasonably concluded that termination was in the manifest best interest of J.M.
MAY, J., concurs.
FARMER, C.J., concurs in result only.