WALLACE, Judge.
T.L. (the Father) appeals a final judgment that terminated his parental rights to his son, D.L.H. Because the Department of Children and Family Services (DCF) failed to establish (1) a nexus or predictive relationship between the past abuse of D.L.H.’s sibling and any prospective abuse of D.L.H. and (2) that termination was the least restrictive means to protect D.L.H. from harm, we reverse the final judgment of termination and remand for further proceedings.
I. THE FACTS
DCF sought to terminate the Father’s parental rights to D.L.H., born September 22, 2005. The Father and H.H. (the Mother) are the unmarried parents of D.L.H. DCF also sought to terminate the Mother’s parental rights to D.L.H. and to two of the Mother’s other children — D.K.H., born May 25, 2002, and D.L.R., born October 8, 2003. T.L. is not the parent of either D.K.H. or D.L.R.; those two children each have different fathers.
The events that led to the filing of the termination petition began when D.L.R., one of D.L.H.’s older siblings, was brought to the emergency room at Lee Memorial Hospital in January 2006. On admission to the hospital, D.L.R. was found to be suffering from multiple bruises and dehydration. D.L.R. also showed signs of sexual abuse. The emergency room physician testified at trial that D.L.R.’s condition was so serious that it could have been fatal without prompt medical treatment. The doctor also testified that the age of D.L.R.’s bruises was indicative of a delay in seeking treatment for his injuries.
The Father and the Mother were residing together with the three children at the time that the injuries to D.L.R. occurred. At trial, both the Father and the Mother denied any knowledge concerning how D.L.R. had sustained his injuries. There was no evidence establishing the identity of the perpetrator of the abuse to D.L.R. In the absence of such evidence, the trial court held both the Mother and the Father responsible:
It is not known and it was not established by clear and convincing evidence which parent was the actual perpetrator on [D.L.R.]. The entire evidence in the case suggests that the mother, [H.H.], or the caregiver paramour, [T.L.], or both of them are at fault. Although it is possible that both persons inflicted the harm, the evidence more strongly suggests that one person was inflicting the harm while the other person, with knowledge that the child was being harmed, allowed it to continue by failing to remove the child from harm’s way even though he or she had the opportunity and capability to do so.
Thus the trial court declined to rule out either the Father or the Mother as the perpetrator and found that both of them had engaged in egregious conduct toward the Mother’s child, D.L.R. Despite the severity of the abuse inflicted on D.L.R., *1270 there was no evidence that D.L.H. had been abused.[1]
At the time of the hearing, the Mother had a total of five children and already had a history with DCF. The trial court found that DCF had offered the Mother services in the past but that the Mother had failed to take advantage of the services or to benefit from them. On the other hand, the Father had no prior history with DCF and had never been offered services. Nevertheless, DCF elected to proceed immediately with proceedings to terminate the Father’s parental rights to D.L.H.
DCF never obtained a psychological evaluation of the Father. Although DCF presented the testimony of a psychologist at trial, the psychologist had never even spoken with the Father or the Mother. Instead, the psychologist based his testimony on a review of the children’s medical records and DCF’s case file. In addition, DCF failed to present any evidence at trial that the Father suffered from a mental illness, drug addiction, pedophilia, or some other mental or emotional condition that would make it likely that he would abuse or neglect his son.
In the absence of any evidence that the Father suffered from such a mental or emotional condition, the trial court expressly declined to find that the Father would not benefit from services:
[T]he Court cannot find by clear and convincing evidence that this father, who has never had services, would not benefit from services to the extent that he would not pose a threat to his own son. The Court does not know if he is an untreatable sociopath or sexual deviant or is someone amenable to some kind of treatment.
Despite finding that DCF had failed to prove that the Father could not benefit from services, the trial court elected to terminate the Father’s parental rights under section 39.806(l)(f), Florida Statutes (2006).
The trial court summarized the reasons for its decision in favor of termination as follows:
In summary[,] the Court finds both parents have a demonstrated capacity to do great harm to a very small child and not enough capacity, even with provision of reunification services, to rehabilitate themselves within the time provided by law. Assuming neither parent has an incurable mental defect which forever makes them a threat of harm to children, these parents have too far to go with their rehabilitation. [D.L.H.] deserves permanency within the time prescribed by law. Denying the petition will deny him permanency for an [unacceptable length of time.
Thus the trial court did not base its decision in favor of termination on evidence demonstrating that the Father posed a threat of prospective harm to D.L.H. Instead, the trial court ordered termination of the Father’s parental rights based on its view that offering services to the Father would result in an unwarranted delay in achieving permanency for the child.
II. THE LEGAL BACKGROUND
To grant a petition for termination of parental rights, the circuit court must find that DCF proved the allegations supporting termination by clear and convincing evidence. E.E.A. v. Dep’t of Children & Family Servs. (In re D.A.), 846 So.2d 1250, 1251-52 (Fla. 2d DCA 2003). The circuit court must first find grounds for termination of parental rights under section 39.806 and then must consider the manifest best interests of the child under *1271 section 39.810. Rathburn v. Dep’t of Children & Families, 826 So.2d 521, 523 (Fla. 4th DCA 2002). When termination of parental rights is based on the abuse of a sibling, the court must also find a nexus between the abuse of the sibling and the prospective abuse of the child. A.D. v. Dep’t of Children & Family Servs. (In re G.D.), 870 So.2d 235, 238 (Fla. 2d DCA 2004). In addition, DCF must establish that termination of parental rights is the least restrictive means of protecting the child from harm. E.E.A., 846 So.2d at 1252. On appeal, the circuit court’s ruling should be upheld if, upon the evidence presented to the circuit court, there is any principle or theory of law that would support the circuit court’s judgment terminating parental rights. G.W.B. v. J.S.W. (In re Adoption of Baby E.A.W.), 658 So.2d 961, 967 (Fla.1995).
III. DISCUSSION

A. Egregious Abuse to D.L.H.’s Sibling

On appeal, the Father makes three arguments. Initially, the Father argues that the circuit court erred in terminating his parental rights to D.L.H. because DCF did not prove that only the Father or the Mother could have inflicted the injuries to D.L.H.’s sibling. DCF responds that absolute certainty concerning the identity of the perpetrator or perpetrators of the abuse is not required. On this point, we agree with DCF.
The circuit court found that DCF had proved by clear and convincing evidence that the Father’s parental rights should be terminated as authorized by section 39.806(l)(f). Section 39.806(l)(f) provides that parental rights can be terminated “[w]hen the parent or parents engaged in egregious conduct or had the opportunity and capability to prevent and knowingly failed to prevent egregious conduct that threatens the life, safety, or physical, mental, or emotional health of the child or the child’s sibling.” “Egregious conduct” is defined as “abuse, abandonment, neglect, or any other conduct of the parent or parents that is deplorable, flagrant, or outrageous by a normal standard of conduct” and “may include an act or omission that occurred only once but was of such intensity, magnitude, or severity as to endanger the life of the child.” § 39.806(l)(f)(2). This court has previously observed that “a parent who was not present during, or who did not participate in, physical abuse may still have their parental rights terminated if they knowingly failed to protect the child from egregious abuse.” K.A. v. Dep’t of Children & Family Servs. (In re K.A), 880 So.2d 705, 708 (Fla. 2d DCA 2004) (citing C.S. v. State, Dep’t of Health & Rehabilitative Servs. (In re B.S.), 697 So.2d 914 (Fla. 2d DCA 1997)).
The emergency room physician testified that the injuries to D.L.H.’s sibling occurred twenty-four to forty-eight hours before the sibling was taken to the emergency room. The evidence presented at the trial established that D.L.H.’s sibling was always in the care of the Mother, the Father, or both of them during the period when the injuries were inflicted. In addition, the doctor explained that the child’s injuries were so severe that they would have been noticed by a layperson. The children’s maternal grand-mother immediately noticed the injuries when she saw the child. She deemed the injuries so serious that she directed a friend to call the police. The friend contacted the authorities, and the child was taken to the hospital in an ambulance. The Father himself conceded that he thought the injuries were severe enough that he had recommended that the Mother take the child to the hospital.
This evidence supported the trial court’s conclusion that D.L.H/s sibling suffered serious abuse at the hands of either the *1272 Father or the Mother. Without question, the Father was aware of the severity of the injuries to D.L.H.’s sibling and knowingly failed to take appropriate steps to obtain necessary medical care for the child. Under these circumstances, the trial court did not err in finding that DCF established by clear and convincing evidence grounds to terminate the Father’s parental rights to D.L.H. under section 39.806(l)(f).

B. The Nexus Requirement

The Father’s second argument is that DCF failed to establish a nexus or predictive relationship between the past abuse of D.L.H.’s sibling and any prospective abuse of D.L.H. In support of this contention, the Father points out that DCF failed to prove that he suffered from any mental condition or that the past abuse of the older sibling had any impact on D.L.H. DCF responds that the severity of the injuries to D.L.H.’s sibling was sufficient to demonstrate the requisite nexus. On this point, we agree with the Father.
Before a court terminates parental rights to a child under section 39.806(l)(f), DCF must demonstrate that there is a nexus or predictive relationship between the past abuse of the injured child and any prospective abuse of siblings. K.A., 880 So.2d at 709; D.O. v. S.M., 981 So.2d 11, 18-19 (Fla. 4th DCA 2007). “ ‘Generally, this nexus is established when the parent has a mental or emotional condition that will continue, such as mental illness, drug addiction, or pedophilia, and which will make it highly probable that in the future the parent will abuse or neglect another child.’ ” AD., 870 So.2d at 238 (quoting C.M. v. Dep’t of Children & Family Servs. (In re C.M.), 844 So.2d 765, 766 (Fla. 2d DCA 2003)); see also Gaines v. Dep’t of Children & Families, 711 So.2d 190, 193 (Fla. 5th DCA 1998) (holding that in order to support a termination of parental rights based on prospective abuse it is necessary to show “that the behavior of the parent was beyond the parent’s control, likely to continue, and placed the child at risk,” and citing the parent’s mental illness as an example).
In its discussion of the nexus issue, the circuit court relied on the expert witness testimony of the psychologist offered by DCF. However, the psychologist had never even met the Mother or the Father. The psychologist based his opinion on the pattern of physical violence between the Father and the Mother. The psychologist also based his opinion on an allegation that D.L.H. had also been abandoned, abused, or neglected. Yet, DCF conceded at the termination hearing that the alleged injuries to D.L.H. in December 2005 were unfounded and that the alleged injuries in January 2006 were accidental. Moreover, the psychologist also testified that the injuries to D.L.H.’s sibling did not indicate a lack of self-control or that the perpetrator was a pedophile.
The circuit court acknowledged that it did “not have the benefit of a psychological assessment” and that it did “not know if [the Father was] an untreatable sociopath or sexual deviant.” There was no evidence that the Father had an addiction to drugs other than the fact that he has smoked marijuana. The circuit court also relied on the nature of the injuries to D.L.H.’s sibling as evincing “a perpetrator who was undeterred, unfeeling, very impulsive, and very likely possessing an explosive temper” and who was “capable of harming any child under his or her care and control, including his or her very own flesh and blood.” However, the testimony of DCF’s own expert did not establish that the Father lacked self-control or had a drug addiction or a mental or emotional condition. For this reason, the circuit court erred *1273 when it found that a nexus existed between the harm to D.L.H.’s sibling and a threat of prospective harm to D.L.H.

C. The Least Restrictive Means

The Father’s third argument is that DCF failed to establish that terminating his parental rights was the least restrictive means to protect D.L.H. DCF responds that the injuries to D.L.H.’s sibling demonstrated that the Father could not be trusted to care for D.L.H. On this point, we also agree with the Father.
Because the termination of parental rights impacts a fundamental liberty interest, DCF must show that granting termination is the least restrictive means of protecting the child. Fla. Dep’t of Children & Families v. F.L., 880 So.2d 602, 608 (Fla.2004); Padgett v. Dep’t of Health & Rehabilitative Servs., 577 So.2d 565, 571 (Fla.1991). “This means that [DCF] ordinarily must show that it has made a good faith effort to rehabilitate the parent and reunite the family, such as through a current performance agreement or other such plan for the present child.” Padgett, 577 So.2d at 571. The purpose of the use of this test is the “reestablishment of the parent-child bond.” M.H. v. Dep’t of Children & Families, 866 So.2d 220, 223 (Fla. 1st DCA 2004).
Here, the trial court noted that termination proceedings against the Father “were expedited ... without offering him a case plan for reunification.” But the evidence at trial did not establish that the Father had abused D.L.H. or that the Father had a mental or emotional condition that would prevent him from benefiting from court-ordered services. Indeed, the trial court noted that it could not find that the Father would not benefit from services. While the trial court found the Father’s state of mind relative to the abuse of D.L.H.’s sibling to be “very disturbing,” the trial court did not have the benefit of a psychological assessment. Because there was no evidence that the Father would not benefit from court-ordered services, the trial court erred in concluding that the termination of the Father’s parental rights was the least restrictive means of protecting D.L.H.
IV. CONCLUSION
We share the trial court’s concern about the abuse inflicted on D.L.H.’s sibling and the Father’s role — whatever it may have been — in this disturbing incident. However, the trial court impermissibly allowed its otherwise laudable wish to achieve permanency for D.L.H. as soon as possible to override DCF’s failure of proof on the nexus and least restrictive means requirements. Accordingly, we reverse the final judgment terminating the Father’s parental rights to D.L.H. and remand for further proceedings.
Reversed and remanded for further proceedings.
WHATLEY and VILLANTI, JJ., Concur.

. There was also no evidence that D.K.H., the Mother’s other child, had been abused.